STANISLAUS MARQUIS *vs.* JOHN NESMITH REAL ESTATE COMPANY.

Middlesex.   October 7, 1937. — April 18, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Landlord and Tenant,* Common stairway, Landlord's liability to invitee of tenant. *Negligence,* One owning or controlling real estate.

On evidence that brass nosing on the edge of a platform at the top of a common stairway, in good condition at the beginning of the tenancy of the proprietor of a restaurant on an upper floor of the building, after-

wards had become worn and smooth, by reason of which a business visitor leaving the restaurant slipped thereon and was injured, a finding that the landlord was liable for such injuries was warranted.

TORT. Writ in the Superior Court dated April 12, 1935.

A verdict for the plaintiff in the sum of $650 was returned before *Cox*, J. The defendant alleged exceptions.

The case was submitted on briefs.

*T. H. Calhoun & E. J. Sullivan,* for the defendant.

*J. J. Kirwin & J. H. Gilbride,* for the plaintiff.

RUGG, C.J. This is an action of tort whereby the plaintiff seeks to recover compensation for personal injuries sustained by him in falling on a common stairway in a building owned by the defendant. There was evidence in its aspect most favorable to the plaintiff tending to show these facts: The plaintiff with his wife, on the afternoon of December 8, 1934, dined in a restaurant on the second floor of the building owned by the defendant. The proprietor of the restaurant occupied the premises used as a restaurant as tenant at will. After dining, the plaintiff left the restaurant and, going to the edge of the platform at the head of the stairs, put his right foot forward, with the ball of his foot on the edge of the platform, then started to lift his left foot, and as he did so his right foot slipped; he lost his balance and slid down two or three steps on his left foot; "then he dragged his foot" and fell down the stairway, sustaining injuries for which damages are sought in this action. He fell from the platform at the top of the stairway and not from the first step down. The stairs were about four and one half feet wide and the treads were made from some sort of composition resembling stone. There was a brass nosing on the edge of the steps and also on the edge of the platform. The testimony varies as to the thickness of the brass nosing from one eighth of an inch to one fourth of an inch, and as to its depth from the top to the bottom from one and one fourth to one and one half inches. The brass nosing was about one fourth to three eighths of an inch wide in the center of the platform, where it was worn,

"where the people go down." On the night of the accident, the stairs were very slippery. At the ends of the platform against the wall, the brass nosing was not worn, but where the people walk or go down, the platform and each step was worn toward the center, and on the platform it was worn and very slippery; it was "sort of chewed out, like skived off." Looking down on the brass nosing, in general appearance it was "a bit rounded on the face." The stairway was straight and led from the second floor to the street, and there was a brass railing on each side from top to bottom, but the plaintiff did not have hold of it when he slipped. A brass foundryman who had examined the stairway testified that, "as the edge is worn off and more of the nosing is exposed, the piece of brass that one steps on towards the centre becomes wider or thicker, it is exposed farther down and naturally becomes wider . . . the top of the nosing becomes wider . . . when the nosing is in its normal position and a person puts his foot on the extreme edge, the sole of his foot comes in contact with the nosing; the stone of the platform wore with the brass." They both wore together and "both wore the same in this case."

The jury returned a verdict for the plaintiff. The single question of law presented on these exceptions is whether there was error in the denial of the defendant's motion for a directed verdict in its favor.

The plaintiff was a business visitor of a tenant of the defendant. His rights are measured by the legal obligation which the defendant owed to that tenant. The duty of the landlord in respect to a common passageway controlled by him "is that of due care to keep it in such condition as it was in, or purported to be in, at the time of the letting." *Andrews* v. *Williamson,* 193 Mass. 92, 94. *Griffin* v. *Rudnick,* 298 Mass. 82, 84. *Cushing* v. *Jolles,* 292 Mass. 72, 75. *Kirby* v. *Tirrell,* 236 Mass. 170, 171.

The answer of the defendant, to an interrogatory, to the effect that "The platform and brass edging have always been in good condition," might have been taken to refer to the time of the beginning of the tenancy of the proprietor

of the restaurant.*    This might have been found to mean safe or proper, and not dangerous and defective.  *Codman* v. *Hygrade Food Products Corp.* 295 Mass. 195.    *Parker* v. *Bridgeport Ins. Co.* 10 Gray, 302, 304, 305.    Thus a finding was permissible that the condition of the platform and nosing was not the same as when the tenancy of the proprietor of the restaurant began.    The jury took a view.    Upon all the evidence, including what was seen on the view, we are of opinion, though with some hesitation, that the jury could have found in favor of the plaintiff.    The evidence also warranted a finding that the platform and nosing had become worn, smooth and slippery and were in a defective condition.  *Moynihan* v. *Holyoke,* 193 Mass. 26.    *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550.    *Mulloy* v. *Kay Jewelry Co.* 289 Mass. 264, 266.    *Shrigley* v. *Boston Symphony Orchestra, Inc.* 287 Mass. 300, 303.    *Cook* v. *Boston Elevated Railway,* 256 Mass. 27, 29.    While the question is close on the point whether the plaintiff fell where there was a worn place and where the people walk, a finding was warranted that there was a causal connection between the defective condition and the injury to the plaintiff.    There is nothing to indicate that the plaintiff was not leaving the restaurant in the usual way and at the customary place.

*Exceptions, overruled.*

---

* The interrogatory in question was as follows: "Will you please describe fully and with particularity, the condition of the platform at the head of the stairway, the tread at the edge of the platform, as well as the brass bar attached to the nosing of the tread at the head of the stairway on January 8, 1934."    The answer to that interrogatory was: "The platform and brass edging have always been in good condition."    It was stated in the bill of exceptions: "It was . . . agreed that [that] interrogatory . . . and the answer thereto is taken as the defendant's statement of the condition of the stairway and platform as of the beginning of the tenancy . . . in March, 1933.    At the beginning of the tenancy in March, 1933, the same platform and stairway with the same brass nosing were there." — REPORTER.