SUSAN LYNCH *vs.* THE FIRST NATIONAL BANK OF BOSTON.

SAME *vs.* CITY OF BOSTON.

Suffolk.    April 7, 1941. — July 3, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Nuisance. Way,* Public: nuisance, metal letters in sidewalk, sign, defect. *Negligence,* Metal letters in public sidewalk, In use of way.

Metal letters imbedded in a public sidewalk in a city and forming the name of the abutting landowner were "signs . . . placed on or over" the way within G. L. (Ter. Ed.) c. 85, § 8, and, where they were placed in accordance with a permit issued under that statute, they were not a nuisance.

Evidence of the circumstances in which a traveller on a public sidewalk on a damp day slipped and fell on "shiny," apparently "rather smooth and worn" metal letters imbedded in the concrete of the sidewalk by an abutting landowner several years before, at which time their exposed surfaces had been impregnated with an abrasive grit, would have warranted findings of liability of the landowner due to negligence respecting the condition of the letters at the time of the accident, and of a defect in the way then existing for which the city was liable under G. L. (Ter. Ed.) c. 84, § 15.

Two ACTIONS OF TORT.   Writs in the Superior Court dated October 27, 1934.

The actions were tried before *Kirk*, J.

The plaintiff alleged in the declarations, and there was evidence, that due notice of the time, place and cause of her injuries was given to the defendants.

*R. J. Walsh*, (*J. E. Rogerson* with him,) for the plaintiff.

*K. C. Parker*, for The First National Bank of Boston.

*K. Hern*, Assistant Corporation Counsel, for the city of Boston.

DOLAN, J.   These are two actions of tort to recover compensation for personal injuries sustained by the plaintiff as a result of falling on the sidewalk in front of a building, owned and controlled by the defendant bank, on Milk Street, a public highway in the defendant city.   The declaration in the first case is in three counts, the first alleging a defective condition and want of repair due to the negligence of the defendant, and the second and third alleging a nuisance.   In the case against the defendant city the declaration is in one count, alleging a defective condition of the sidewalk resulting from its negligence.   The cases were tried to a jury, and at the close of the evidence the judge directed verdicts "for the defendant on all counts in both cases" subject to the plaintiff's exceptions.

The evidence in its aspect most favorable to the plaintiff would warrant the jury in finding the following facts: The sidewalk in front of the bank building on Milk Street is ten feet wide.   That portion of the sidewalk in front of the doorway of the bank is eighteen feet six inches long.   The sidewalk in front of the bank building is forty-two feet long, running from Devonshire Street to Federal Street.   It runs at a downhill grade to Federal Street, the percentage of the grade being three eighths of an inch to one foot slope.   The "doorway going into the bank is level, but the sidewalk is sloping."   The "bank step is one half of an inch above the sidewalk at the Devonshire Street, or westerly, end and seven and one half inches above it at the Federal Street . . . end of the step."   The sidewalk is of concrete.   Letters

forming the words "The First National Bank of Boston" were imbedded in it. The letters in the word "First" were ten and one half inches long, those forming the words "National Bank" five inches long, and those forming the word "Boston" eight inches long. The letters were made of a material known as "Bronzalum . . . a bronze casting with the upper or wearing surface impregnated with an abrasive grit called carborundum," the upper surface being that which "shows on the sidewalk and that one would walk upon." It is similar to material using iron as a matrix, generally used on stairs or ramps or floors where there is a slipping hazard. The step leading from the sidewalk to the entrance to the bank is of granite, and three doors of the bank open onto the sidewalk. "From the center of the step in the middle of the bank entrance down to the sidewalk the drop is three and one half inches."

On Monday, September 24, 1934, the plaintiff went to the bank at about 12:30 P.M. to open an account. Her daughter accompanied her. She and her daughter "went out of the bank." The plaintiff testified that she "walked out the bank door and stepped on those brass, on those shiny letters, and, as . . . [she] stepped on one, . . . [her] foot went right under . . . [her]." After she fell she looked around and she was seated on the word "First." She sustained a fracture of the left hip. In later testimony the plaintiff stated that she did not look to the sidewalk and did not see the letters on the sidewalk "before she stepped from the step to the sidewalk," and that a statement made by her at the hospital that she did not know what she stepped on "was the truth." The day was damp and foggy. The plaintiff was wearing plastic shoes with rubber heels. After she fell her clothes were dry but her dress had a lot of dirt on it. "It was very dirty there."

The jury could find that the plaintiff after she fell was seated on the letters of the word "First," on the letter "T" especially; that there was a smooch mark two inches long on the letter "T"; that the letters were "raised a little and rolled . . . sort of rolled . . . [and] slanted . . . they were rather worn . . . they looked rather smooth and

worn"; that the sidewalk was damp; and that "it had rained until nine o'clock" that morning.

The letters had been placed in the sidewalk in accordance with a permit issued by the board of street commissioners of the defendant city on July 7, 1926. It was agreed that the letters in the word "First" were constructed with an iron base to which each letter was attached to hold it in the sidewalk, and that the letters were put in the sidewalk and concrete poured around them so that it came up to the level of the letters. A view was taken by the judge and jury and it was agreed that, with the exception of whatever wear may have been caused to the letters or the sidewalk by travel or the elements since the date of the accident, they were in the same condition as at that time. No repairs nor replacement of the letters has been made since their installation in November, 1926. An expert called as a witness by the defendants testified that some of the particles of grit, with which the letters were impregnated upon manufacture to a depth of one sixteenth of an inch, will be "removed" to that depth with hundreds going over the letters each day; that rain, snow, ice and sleet and wooden heels "going over the letters, as time goes on, [will] have some effect on . . . [the] letters"; that eventually they would "get down to the one sixteenth of an inch depth . . . would be smooth . . . [and] the non-slip element would disappear"; that as time goes on with the "traffic condition on the surface which continues day after day and on this busy sidewalk . . . these particles will wear off"; that when the letters were laid "they were laid flush with the concrete"; that if there was "dust or dirt in the dampness on these letters," which formed a film, whether "that would make them more slippery" would depend on how thick the film was. He further testified that he had observed the letters in question; that some of the particles of grit were still left; that so long as any of these particles of grit remained the anti-slip element would "not go out," and "that the letters do now show signs of wear."

There was no error in the action of the judge in directing verdicts for the defendant bank on the counts for nuisance.

The letters were placed in the sidewalk in accordance with a permit issued by the board of street commissioners of the city of Boston. In our opinion the letters imbedded in the sidewalk constituted signs on or over a public way within the meaning of G. L. (Ter. Ed.) c. 85, § 8, under which municipal authorities are expressly empowered to issue permits for the placing and maintaining of signs and other structures "on or over public ways." *Boston* v. *A. W. Perry, Inc.* 304 Mass. 18, 21, 22. The letters in the sidewalk did not constitute an illegal or unauthorized obstruction. Having been legally authorized, they did not constitute in law a nuisance. See *Commonwealth* v. *Parks,* 155 Mass. 531; *Murtha* v. *Lovewell,* 166 Mass. 391, 392; *Levin* v. *Goodwin,* 191 Mass. 341; *Whitcomb* v. *Vigeant,* 240 Mass. 359; *Marshall* v. *Holbrook,* 276 Mass. 341. Their maintenance in the sidewalk was not an unlawful occupation of the way. See *Hunt Drug Co.* v. *Hubert,* 298 Mass. 195, 196. Compare *Anderson* v. *Kopelman,* 279 Mass. 140, 145.

We are of opinion, however, that the judge erred in directing the jury to return a verdict for the defendant in each case on the count alleging the way to have been defective as a result of the negligence of the defendant. While covers to vaults, coal holes and such signs as that here involved "are not of themselves obstructions in the street and therefore not defects, yet being adapted to the sidewalk as a part of its construction and arrangement for use in a sidewalk, a danger from their insecure condition may reasonably be treated as arising from a defect in the sidewalk within the meaning of G. L. (Ter. Ed.) c. 84, §§ 1, 15 . . . ." *Boston* v. *A. W. Perry, Inc.* 304 Mass. 18, 20.

Whether the letters in the present cases were in such condition as to constitute a defect in the sidewalk, and whether the defendants were negligent in permitting the way to be in that condition, were questions of fact for the jury to determine. *Smith* v. *Fall River,* 295 Mass. 88, 90. On the evidence we think that it could not have been ruled properly that the jury would not be warranted in finding that the sidewalk was in a defective condition as a result of the negligence of the defendants. See *Cromarty* v. *Boston,* 127 Mass.

329, 331, 332; *Moynihan* v. *Holyoke*, 193 Mass. 26, 28; *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550, 552; *Kelleher* v. *Newburyport*, 227 Mass. 462, 464; *Mulloy* v. *Kay Jewelry Co. of Quincy*, 289 Mass. 264, 266; *Smith* v. *Fall River*, 295 Mass. 88; *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203, 206; *Harrison* v. *Poli-New England Theatres, Inc.* 304 Mass. 123, 126. Nor could it have been ruled properly on the evidence that the plaintiff was not in the exercise of due care at the time of the accident. G. L. (Ter. Ed.) c. 231, § 85. *Mosher* v. *Hayes*, 288 Mass. 58, 59.

The plaintiff's exceptions to the action of the judge in directing verdicts in the first case for the defendant bank on the counts for nuisance are overruled, but her exception in that case to the action of the judge in directing a verdict for the defendant on the count for negligence is sustained. In the second case the plaintiff's exception to the action of the judge in directing a verdict for the defendant is sustained.

*So ordered.*