Sadye· Harris, executrix, *vs.* Richard H. Gee.

Bristol.   October 22, 1951. — January 3, 1952.

Present: Qua, C.J., Lummus, Wilkins, Williams, & Counihan, JJ.

*Negligence,* Invited person, One owning or controlling real estate. *Proximate Cause.*

Evidence warranted a finding that a tenant, who fell and was injured on stairs leading to the basement of a building owned by his landlord while seeking the landlord's janitor to complain about the hot water furnished to his apartment, which was in another building near by, was a business invitee when injured.

Evidence did not warrant a finding that a barrel placed on a stairway leading to the basement of a building or an alleged "barrier" of barrels across the foot of the stairway was the cause of a fall suffered by a business invitee of the owner of the building while descending the stairway.

Tort.   Writ in the Superior Court dated January 10, 1947. The action was tried before *Forte,* J.

*W. J. Fenton,* (*M. A. Westgate* with him,) for the defendant.

*W. A. Torphy,* (*M. C. Epstein* with him,) for the plaintiff.

Williams, J.   In this action of tort to recover compensation for personal injuries there was a verdict for the original plaintiff, Emanuel Harris.   The case comes here on the defendant's exception to the denial of his motion ·for a directed verdict.   Harris having died since the trial, the executrix of his will has been substituted as party plaintiff.

There was evidence substantially as follows: The plaintiff (referring to the decedent) was injured on January 17, 1946, by falling on a stairway leading from the first floor to the basement of a certain building called the Archer Building, located at the corner of Rock and Granite streets in Fall River, and owned by the defendant. At the time of the accident the plaintiff was, and for some years prior thereto had been, a tenant of the defendant in an apartment located in a nearby building. The terms of the rental agreement required that heat and hot water be furnished. At the time of the agreement the defendant told the plaintiff that if he had any trouble with the heat or hot water to "contact" the janitor who could be found either in the basement of an adjoining building from which heat was supplied to the plaintiff's apartment or in the basement of the Archer Building. Thereafter, the plaintiff on many occasions went to the basement of the Archer Building to speak to the defendant's janitor and used the stairs on which the accident occurred. These stairs were eighteen in number, of wooden construction, and ran straight down the side of the building until near the bottom of the flight where the last three stairs turned to the right. This turn of the stairs is shown on a photograph annexed to the bill of exceptions. At about 2 P.M. on the day of the accident the plaintiff was descending these stairs in order to "contact" the janitor in the basement and complain about the hot water in his apartment. He testified that as "he made a right turn to descend the last three stairs he noticed a barrier in front of him. He was still going, but in the second that followed he saw the barrier and something hit him. He did not see what hit him. He was thrown to the floor after he got hit," and was unconscious after the fall. On regaining consciousness, he found himself "sprawled" on the bottom step of the stairs and saw empty ash barrels scattered and overturned on the basement floor. At some time on that day, previous to the accident, the defendant's janitor had placed a wooden barrel on the second step of the stairs up from the basement floor. As the plaintiff descended the

stairs and made the turn to the right, this barrel was on his left. There were approximately thirty-two inches between the barrel and the end of a wooden partition which carried a hand rail and extended along the right of the stairway as far down as the turn above mentioned.

On this evidence it could be found that the plaintiff had been invited to go to the basement of the Archer Building in order to talk with the janitor on matters connected with his tenancy, and that at the time of the accident he was using the stairs as a business visitor. *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176. It could also be found that these stairs were a part of the premises which he was expected to use in reaching the basement. See *Cowen* v. *Kirby*, 180 Mass. 504, 506; *Denny* v. *Riverbank Court Hotel Co.*, *supra*; *Rosen* v. *Boston Symphony Orchestra, Inc.* 315 Mass. 732. The duty of a landowner to a business visitor is to use reasonable care to keep the premises reasonably safe for such use of the premises as the visitor has been invited to make. *Kelley* v. *Goldberg*, 288 Mass. 79, 81. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 705.

The principal question for decision is whether there is proof of any causal connection between the plaintiff's fall and any act of the defendant's janitor which could be found to be negligent. The basement of the Archer Building was used as a boiler room. Several metal barrels were kept there for the purpose of collecting and taking out the ashes from the furnace. A "few days" before January 17 when the plaintiff had last visited the basement five of these barrels were piled at the foot of the stairway. If, as contended by the plaintiff, it could reasonably be inferred from the fact that the barrels were piled across the stairway a few days before that they were so piled at the time of the accident, it does not appear that the plaintiff "hit" any such pile of barrels or that they "hit" him. Neither does it appear that he struck the wooden barrel on the second stair. His testimony was that "there was a dim light lighted in the basement, so he could see where he was going . . . he

saw the barrier and something hit him. He did not see what hit him." On redirect examination by his counsel he was asked, "What hit you?" He answered, "The only thing there was the banister; it must have been the banister." The banister to which apparently he referred was the hand rail along the stairs on the wooden partition which continued no farther than the point where the last three stairs turned to the right.

In this state of the evidence the jury would not be warranted in finding that the plaintiff's fall was caused by any "barrier" of barrels or by the barrel on the stair. In our opinion the judge should have allowed the defendant's motion for a directed verdict.

*Exceptions sustained.*
*Judgment for the defendant.*