DOROTHY L. DREHER *vs*. BEDFORD REALTY, INC.

Bristol.   October 29, 1956. — February 1, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Landlord and Tenant*, Landlord's liability to tenant or one having his rights, Common stairway, Control of premises. *Proximate Cause. Law or Fact. Practice, Civil*, Charge to jury. *Workmen's Compensation Act*, Action against third person. *Evidence*, Relevancy and materiality.

Evidence that, at a time when a portion of a business building was leased under a lease leaving in the lessor control of a stairway furnishing the only access to the leased portion, the stairway was "in good condition," that about fourteen months later, when an employee of the lessee fell while descending the stairway and was injured, the condition of the stairway had deteriorated substantially to the knowledge of the lessor, and that the employee's fall was due to the deteriorated condition, warranted a finding that the lessor was liable to the employee for breach of the lessor's duty to the employee to use reasonable care to maintain the stairway in as good condition as it was or appeared to be in at the time of the leasing.   [387–388]

A finding was warranted by the evidence that a fall of one descending a wooden stairway was caused by a worn and concave condition of the steps at a place customarily used in descending the stairway.   [389]

The construction of an unambiguous lease of a portion of a business building with respect to the matter of control of a stairway leading to the leased portion was a question of law for the court.   [389]

A lease of a portion of an upper floor of a business building reached only by a certain stairway, "together with the right to access to and from the said premises," left the control of the stairway in the lessor even though it was swept by employees of the lessee and a light over its top was controlled by a switch on the leased premises.   [390]

An exception to a portion of a charge to a jury which, standing alone,

would have been incorrect, was not to be sustained where the judge earlier in the charge had fully and correctly stated the rule of law in question and restated it when the exception was taken at the close of the charge. [390]

In an action originally brought under G. L. (Ter. Ed.) c. 152, § 15, as appearing in St. 1943, c. 432, by an insurer under the workmen's compensation act in the name of an injured employee of the insured against one "other than the insured" alleged to be legally liable for the injury, evidence of payment of compensation to the plaintiff by the insurer and of an ultimate settlement made between the plaintiff and the insurer including a lump sum payment and a relinquishment by the insurer to the plaintiff of all its interest in the action had no relevancy at the trial of the action and should have been excluded. [390–392]

Tort. Writ in the Superior Court dated October 19, 1951. The action was tried before *Dewing*, J.

*William J. Fenton*, for the defendant.

*Leonard E. Perry*, (*William B. Perry, Jr.*, with him,) for the plaintiff.

Spalding, J. In this action of tort the plaintiff seeks to recover damages for personal injuries sustained when she slipped and fell while descending a stairway allegedly under the control of the defendant. The jury returned a verdict for the plaintiff. The defendant excepted to the denial of its motion for a directed verdict and to certain portions of the judge's charge. The plaintiff, who also comes here on exceptions, waives them in the event the defendant's exceptions are overruled.

1. We are of opinion that the trial judge correctly denied the defendant's motion for a directed verdict. The pertinent evidence may be summarized as follows: At all times here material the defendant was the owner of the Page Mill, a three story factory building in New Bedford. On September 19, 1945, the defendant leased the southerly portion of the third floor of this building to the Cove Dress Corporation for a period of three years from September 1, 1945. This lease, on December 24, 1947, was renewed as of September 1, 1948, for a further period of two years. At some time prior to the accident the name of the Cove Dress Corporation was changed to the Abetta Sportswear Corporation and it will hereinafter be called Abetta.

At the time of the accident there were about one hundred sixty employees of Abetta who had "access to and from" these premises only by means of a stairway located on the southeasterly side of the building, and this number, with minor fluctuations, had used this stairway throughout the period that Abetta had occupied the premises. The stairway from the second to the third floor consisted of one section leading westerly from the landing on the second floor to a platform, and a second section leading easterly from the platform to a landing at the top which led to the premises on the third floor occupied by Abetta. The upper end of the stairway between the second and the third floor had a handrail on the left side as one descends the stairway, while on the right side there was no handrail. The stairs were of wood and were about seven or eight feet in width.

About 4:30 P.M. on November 3, 1949, the plaintiff, an employee of Abetta, left the third floor premises by means of the above described stairway and started to descend on the right side where there was no handrail. Five or six other employees were descending with her. The only light on the stairway at this time was obtained through a large window at the top of the stairs. The day was dark and rainy. At "about the second stair from the top of the third floor landing" she slipped off the stair and fell on her back on the eighth step from the top.

A week before her fall, the plaintiff observed that the second and third steps of the top section of the stairway were worn. Photographs of the stairway, which are before us, also showed that these steps were worn considerably in several places, and that the worn spots were concave in the places which apparently were used the most by persons going up and down the stairs. The defendant's president, Cohen, testified that the stairway was "in good condition" at the time he signed the lease with Abetta. He was familiar with its general condition at all times relevant to this controversy, for his duties required him to use the stairway on various occasions.

These facts are sufficient to support a verdict for the

plaintiff. The defendant owed to the plaintiff only such duty with respect to the portions of the Page Mill retained under its control as it owed to Abetta, the plaintiff's employer. *Leslie* v. *Glazer,* 273 Mass. 221, 223. *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170. This duty was to use reasonable care to maintain such portions in as good condition as that in which they were or appeared to be at the time of the letting to Abetta. *Bacon* v. *Jaques,* 312 Mass. 371, 373, and cases cited. *Stedfast* v. *Rebon Realty Co. Inc.* 333 Mass. 348, 350. According to Cohen the stairway was "in good condition" at the time the premises were leased to Abetta. It is not clear whether Cohen, when he gave this testimony, had reference to the condition of the stairway at the time of the original letting on September 1, 1945, or to its condition on September 1, 1948. The defendant did not choose to limit or clarify this testimony by cross-examination as it had opportunity to do, and the jury might reasonably have inferred that Cohen had reference to the time of renewal.[1] In addition, there was evidence that the condition of the stairway was affected by the daily use by about one hundred sixty employees of Abetta. This evidence together with the testimony of the plaintiff and the photographs showing the worn condition of the stairway at or about the time of the accident might well warrant a finding that the condition of the stairway had deteriorated substantially since September 1, 1948. See *Braimaster* v. *Wolf,* 320 Mass. 620, 621. There was other evidence from which the jury could reasonably have found that Cohen had reason to know of this deterioration, and that the defendant was at fault in failing to remedy it. *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550, 552. *Loudon* v. *Beaulieu,* 277 Mass. 33, 35. *Shrigley* v. *Boston Symphony Orchestra, Inc.* 287 Mass.

---

[1] The trial judge instructed the jury that the defendant was "obliged to use reasonable care to maintain the . . . staircase . . . in as good condition as . . . [it was] in or appeared to be in at the time of the letting, which was . . . September 1, 1948," that is, the time of the renewal. We assume for present purposes that this instruction was correct. See *Murray* v. *Lincoln,* 277 Mass. 557, 558; *Griffin* v. *Rudnick,* 298 Mass. 82, 84. Compare *Chapman* v. *Standen,* 302 Mass. 4, 6; *Denny* v. *Burbeck,* 333 Mass. 310, 313. Also compare *Watriss* v. *First National Bank,* 124 Mass. 571, 576.

300, 304. *Mulloy* v. *Kay Jewelry Co. of Quincy*, 289 Mass. 264, 266. *Corcoran* v. *United Markets, Inc.* 314 Mass. 26, 27. *McCollum* v. *United Markets, Inc.* 323 Mass. 32, 34.

A more difficult question is whether the jury could reasonably have found that there was a causal connection between the defective condition of the stairs and the plaintiff's injury. We are of opinion that such a finding was warranted. *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203, is directly in point on this question. In that case the steps on which the plaintiff fell were worn "where the people go down." So too in the case at bar, the steps on which the plaintiff slipped were worn in several places, including places on the side of the stairway where the plaintiff descended. These worn places were obviously the places bearing the greatest proportion of the traffic on the stairway. As was said in the *Marquis* case at page 206, "There is nothing to indicate that the plaintiff was not leaving . . . in the usual way and at the customary place." The jury thus could have found that the plaintiff was descending the steps at a point where they were excessively worn, and that her fall was due to a defect for which the defendant was responsible.

2. The defendant took exception to the trial judge's charge that, as matter of law, control of the stairway on which the injury occurred remained with the defendant. Of course if the defendant was not in control of the stairway, it would not be liable. *Minkkinen* v. *Nyman*, 325 Mass. 92, 94. The question of control depends upon the agreement of the parties to the letting. Where the agreement is ambiguous or uncertain on the matter of control the question is one of fact and the construction adopted and acted upon by the parties is entitled to great weight. *Nash* v. *Webber*, 204 Mass. 419, 424. *Conroy* v. *Maxwell*, 248 Mass. 92, 97. *Cuscuna* v. *Rood*, 289 Mass. 213, 216. *Ruane* v. *Doyle*, 308 Mass. 418, 420. But where the agreement, particularly in the case of a written lease, is clear and unambiguous the question is one of law for the court. See *Shipley* v. *Fifty Associates*, 101 Mass. 251, 254; *Nunan* v. *Dudley Properties*,

*Inc.* 325 Mass. 551, 552–553. The lease under which Abetta occupied its premises provided in part that "the said lessor does hereby lease, demise and let unto the said lessee the southerly end of *the third floor* of the old Page Spinning Mill . . . *together with the right to access to and from the said premises*" (italics supplied). The stairway, the control of which is in issue, was not part of "the third floor" but merely gave "access to and from" the third floor. Thus the stairway itself was not included within the lease to Abetta. Abetta obtained merely a right in the nature of an easement, while the defendant retained control of the stairway. See *Tremont Theatre Amusement Co.* v. *Bruno*, 225 Mass. 461, 463. That the stairs were swept by employees of Abetta and that there was a light fixture over the top part of the stairs which was controlled by a switch on Abetta's premises does not, in view of the lease, militate against this conclusion. This exception must be overruled.

3. The defendant also excepted to the following portion of the trial judge's charge to the jury: "If you find that it was a defective condition and it did cause the accident, because of the fact that the structural part of the staircase was under the control of the landlord; and you find that, as I say, it was defective and that it caused the accident, then you are to find for the plaintiff . . . ." If this instruction stood alone it would not have been correct, for the landlord's duty is merely to use reasonable care to keep the premises under his control in as good condition as they were in or appeared to be in at the time of the letting. But this instruction did not stand alone. Earlier in his charge the judge had fully and correctly stated the duty resting on the defendant. And when at the close of his charge counsel for the defendant excepted to the above mentioned instruction the judge restated to the jury the appropriate rule to be applied with respect to the duty owed by the defendant. There was no error.

4. Over the objection and exception of the plaintiff, the trial judge admitted evidence of payments to the plaintiff by Abetta's insurer under the workmen's compensation act.

This evidence was to the effect that the insurer had made weekly compensation payments to the plaintiff from the date of her injury until February 12, 1953; that on that date the insurer reached a settlement with the plaintiff whereby the latter accepted a lump sum payment of $3,750, which together with the weekly payments amounted to $9,260.58; and that $1,388.95 in addition was paid for medical expenses. It was agreed that as part of the settlement the insurer relinquished to the plaintiff all its interest in the present action which was originally brought by it in the name of the plaintiff. In his charge the judge told the jury, subject to the defendant's exception, to disregard this evidence.

This evidence ought not to have been admitted, and the instruction to disregard it was right. Under G. L. (Ter. Ed.) c. 152, § 15, as appearing in St. 1943, c. 432, when an employee elects, as did the plaintiff here, to receive compensation under the act, the insurer may bring an action against any person, "other than the insured," who is legally liable for the injury to the employee. If the insurer fails to bring such an action within nine months after the injury, the injured employee may bring it. "In either event," the act provides that "the sum recovered shall be for the benefit of the insurer unless such sum is greater than that paid by it to the employee. If the insurer brings the action four fifths of the excess shall be paid to the employee, and if the employee brings the action he shall retain the entire excess." Thus, both the insurer and the injured employee have an interest in any action brought against the person legally liable for the injury.

Here the insurer chose to relinquish its interest in the action brought by it against the defendant pursuant to § 15 as part of the price of its settlement with the plaintiff. That was of no concern to the defendant, but was entirely a matter between the insurer and the injured employee. One of the aims of § 15 was to impose ultimate liability for an injury to an employee upon the person "other than the insured" legally at fault. *Furlong* v. *Cronan*, 305 Mass. 464,

467.   Here the defendant was found to be legally at fault.
It should not be permitted to defeat or diminish the re-
covery against it by showing negotiations between the in-
surer and the injured employee as to the disposition of the
proceeds of such a recovery.   A contrary holding would re-
sult in conferring a windfall upon the third party wrong-
doer.   Decisions elsewhere under somewhat similar statutes
tend to support this conclusion.   *Jay* v. *Chicago Bridge &
Iron Co.* 150 Fed. (2d) 247, 249 (C. C. A. 10).   *General Ac-
cident, Fire & Life Assurance Corp. Ltd.* v. *Zerbe Construc-
tion Co. Inc.* 269 N. Y. 227, 232.   *Foster* v. *Langston,* 170
S. W. (2d) 250, 251 (Tex. Civ. App.).

> *Defendant's exceptions overruled.*
> *Plaintiff's exceptions dismissed.*