ADELINE MALLARD *vs.* BESSIE D. WALDMAN & another, trustees.

Suffolk. December 7, 1959. — January 18, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or one having his rights, Common stairway, Contract of letting, Control of premises, Letting for public use, Dance hall. *Proximate Cause. Practice, Civil,* Ordering verdict. *Evidence,* Distortion of evidence, Failure to produce witness.

A trial judge cannot be required to order a verdict for the defendant on the plaintiff's opening to the jury. [290]

In an action against the owner of a building for personal injuries sustained by an invitee of a tenant of a dance hall therein through falling on a defective stairway leading to the hall, the jury were entitled to believe testimony by the manager of the building that the hall was rented and to disbelieve his testimony that the renting included the stairway, and to believe his testimony that the stairway was "all right" just before the renting and to disbelieve his testimony that the stairway was "in the same condition as . . . for the last fifteen years." [290–291]

Testimony by a woman that she fell "on the bottom" step while descending a marble stairway and that there "was quite a piece out of the bottom . . . [step], where she was" warranted a finding that there was a causal connection between such defect and her fall although she also testified that when "anybody falls, you don't know how you fell. You just fall." [291]

There was error in allowing counsel for the plaintiff at the trial of an action to comment on the absence of a witness where it was not shown that the witness was available, nor shown nor reasonably inferable that his testimony would have been unfavorable to the defendant. [292]

In an action against the owner of a building for personal injuries sustained by an invitee of a tenant of a room in the building through falling on a defective stairway, it was error to charge the jury that "an owner of property, in control of . . . [a stairway], is supposed to keep it in that condition of repair that it was in at the time" of the letting to the tenant, rather than that the owner's duty was to exercise reasonable care with respect to such maintenance. [292]

The mere fact that, at the time of a letting of a dance hall in a building to a tenant at will at a monthly rental, a stairway leading to the hall was in a defective condition and the owner of the building knew or had reason to know that the hall and the stairway would be used by the

public would not make the owner liable to one who was an invitee of the tenant, but not an invitee of the owner, for personal injuries sustained in a fall on the stairway due to its defective condition, whether the stairway remained in the control of the owner or was included in the letting. [292–293]

TORT. Writ in the Superior Court dated May 15, 1952. The action was tried before *Swift,* J.

*John J. C. Herlihy,* (*Arthur L. Brown* with him,) for the defendants.

*Edward J. Mahan,* for the plaintiff.

CUTTER, J. This is an action of tort to recover for personal injuries to the plaintiff incurred upon premises owned by the defendants, the trustees under a declaration of trust. The trial judge denied, subject to the trustees' exceptions, their motion for a directed verdict on the plaintiff's opening and also their motion for a directed verdict at the close of the evidence. The trustees also excepted to (a) the judge's failure to prevent allegedly improper argument by the plaintiff's counsel and (b) certain portions of the judge's charge. There was a verdict for the plaintiff and the case is here on the trustees' bill of exceptions. The facts are stated in their aspect most favorable to the plaintiff.

The plaintiff with a group of women attended, on May 11, 1951, a dance at Ruggles Hall, one of a series run by a man named "Wally." About 11:15 P.M., as she went down the stairs from the dance hall on the second floor of the building, she "went on her back on the stairs" and "fell on her whole weight. . . . When anybody falls, you don't know how you fell. You just fall. All that she remembers is that she went down and just cracked her back on the stairs." Later she said that she "fell on the bottom stair" and struck her "head on the sixth stair." After she "regained her composure," she observed a "crack in the stairs, piece taken right out . . . just like a broken stair. The stairs were marble . . . . There was quite a piece out of the bottom stair, where she was." Her injuries were serious. She paid admission to the dance. On prior occasions she had noticed "this step with the piece out of it."

The building is a three story brick building.   It has two dance halls and seven or eight offices.   The dance hall on the second floor is reached from 5 Ruggles Street through a long hallway and stairs with two landings, six or seven steps made of marble to each landing.   One or two steps are made of wood.   One Waldman managed the property for the owners and rented the dance hall at 5 Ruggles Street to Wally by oral agreement under which Wally "was a tenant at will paying three hundred dollars a month . . . .   Wally made all repairs inside his hall . . . and paid . . . everything pertaining to the inside of the building. . . .   The entrance to the hall — the stairs going up — were included in the oral lease and rental. . . .   Wally never repaired the stairs . . . .   When . . . [Waldman] rented the hall to Wally, he [Waldman] knew that he [Wally] was going to use it as a public dance hall for the admission of people . . . that as far as he knew, the condition of the stairs was all right just prior to the oral renting to Wally" but Waldman did not then examine the stairs.   "The stairs are in the same condition as . . . for the last fifteen years."   Another witness stated that the stairs "were the same at the time of the leasing as they were" when the plaintiff fell.

The trial judge was not required to direct a verdict on the plaintiff's opening.   In his discretion, he may prefer to have the case "presented on actual evidence rather than . . . on a statement of counsel."   *Perry* v. *Carter,* 332 Mass. 508, 509.   See also *Douglas* v. *Whittaker,* 324 Mass. 398, 399–401; *Amorosso* v. *Farina Bros. Co. Inc.* 339 Mass. 595, 596.

2. The trustees, in support of their position that a directed verdict for them was required at the close of the testimony, contend that there was no evidence (a) that the trustees were in control of the stairs;   (b) that, even if the trustees were in control of the stairs, the stairs were in any different condition from that in which they were, or appeared to be, at the time of the letting (see *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170, 171–173); or (c) showing any causal connection between the defect and the fall.   The trustees were the owners of the property.   The jury without distortion or

mutilation of an integral portion of Waldman's statements
(see *Woods* v. *DeMont,* 322 Mass. 233, 235) could believe
his testimony that the terms of the oral renting included the
dance hall and disbelieve his testimony that Wally also
rented the stairs. See *Nunan* v. *Dudley Properties, Inc.* 325
Mass. 551, 553. They could find support for this view in
the fact that Wally repaired the hall but did no work on the
stairs. They could believe Waldman's testimony that,
"as far as he knew, the condition of the stairs was all right
just prior to the oral renting," and disbelieve the testimony
that the stairs had remained in the same condition for fifteen
years. Waldman's testimony, if thus only partly believed,
was more favorable to the plaintiff than her own testimony
tending to show that the stairs were in the same condition
as at the time of the letting, viz. that she "went to Ruggles
Hall when Wally opened it" and that on "The first night
that she went to Wally's . . . she saw a piece out of the
bottom stair."

The plaintiff's testimony was that most favorable to her
with respect to the causal connection between the alleged
defect and her fall. See *Harris* v. *Gee,* 328 Mass. 213, 215–
216. Cf. *McDonald* v. *Yogel,* 329 Mass. 492, 494; *Boday*
v. *Thibault,* 337 Mass. 243, 245; *Merwin* v. *De Raptellis,*
338 Mass. 118, 120–121, where there was evidence that the
defect in fact caused the injury. Cf. also *Marquis* v. *John
Nesmith Real Estate Co.* 300 Mass. 203, 206; *Dreher* v.
*Bedford Realty, Inc.* 335 Mass. 385, 389. She testified that
she fell "on the bottom stair" and that there "was quite a
piece out of the bottom stair, *where she was*" (emphasis
supplied). Although this evidence was slight, we are unable
to say that the jury could not infer that there was greater
probability that the "piece out of the . . . stair" contrib-
uted to the accident than that she simply fell. The case is
governed by cases like *Dreher* v. *Bedford Realty, Inc.* 335
Mass. 385, 389 (steps worn at place at which jury "could
have found that the plaintiff was descending"), rather than
by cases like *Gerstenzang* v. *Kennedy & Co. Inc., ante,*
174, 175 (where there was no evidence showing the pres-

ence of excessive wax upon the "portion of the floor on which she slipped").

3. The judge erred in permitting comment by the plaintiff's counsel upon the absence of Wally as a witness. It was not shown that Wally was available, although Waldman admitted that he had "not attempted to locate" Wally. See *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 610–611; *Horowitz* v. *Bokron,* 337 Mass. 739, 743–744, and cases cited. It also was not shown, nor was it reasonable to infer, that Wally's testimony would in any degree have been unfavorable to the trustees. See *McKim* v. *Foley,* 170 Mass. 426, 428; *McGeorge* v. *Grand Realty Trust, Inc.* 316 Mass. 373, 377–378.

4. The judge improperly charged that "an owner of property, in control of the premises, is supposed to keep it in that condition of repair that it was in at the time that the place was occupied." We assume that the judge was referring to the stairs and instructing the jury about the law applicable, if they should find, despite Waldman's testimony, that the trustees remained in control of the stairway. He incorrectly stated the applicable rule. After a full review of the numerous earlier cases, this rule in *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170, 172, was said to be that "the duty of the landlord toward persons who come upon the premises to do business with his tenant is no greater than his duty to the tenant, and in the absence of special agreement that duty is *to use reasonable care* to maintain common approaches in as good condition as they were in or appeared to be in at the time of the letting to the tenant" (emphasis supplied). See also *Stedfast* v. *Rebon Realty Co. Inc.* 333 Mass. 348, 350.

5. As the error, just mentioned, in the charge requires a new trial in any event, we do not pause to consider other questions relating to the charge which are unlikely to recur. It is appropriate, however, to discuss one contention of the plaintiff. This is not a case where the landlord extended on his part any invitation to customers of the tenant to visit the premises. Cf. *Underhill* v. *Shactman,* 337 Mass. 730,

733–734. Under our cases, whether the landlord retained control of the stairs or leased them to Wally, the landlord would not be liable to a tenant's customer merely because, at the time of the letting, the premises were in defective condition and the landlord then knew or had reason to know that the leased premises would be used by the public. If the landlord retained control of the stairs, the principle underlying Restatement: Torts, § 359, as applied to facts such as those here present, is inherently inconsistent with the rule of the decisions reviewed in the *Isenberg Bros.* case. In case the stairs were let to Wally, § 359 does not represent the rule of the Massachusetts decisions applicable upon this record with respect to "the tenant and those entering under him." See *Luoma* v. *Socony-Vacuum Oil Co. Inc.* 332 Mass. 101, 104. Cases dealing with the letting or licensing of a public hall for a brief period, in which it is "obvious that the safety of the building must be left mainly to the" owner, do not support the application of § 359 to a case like this. Cf. *Oxford* v. *Leathe,* 165 Mass. 254, 255; *Schofield* v. *Wood,* 170 Mass. 415, 416, 418; *Shrigley* v. *Boston Symphony Orchestra, Inc.* 287 Mass. 300, 302–303; *Simons* v. *Murray Realty, Inc.* 330 Mass. 194, 196–197; note, 62 Harv. L. Rev. 669, 671.

*Exceptions sustained.*