HAROLD BRIDGES & another *vs.* BOSTON HOUSING AUTHORITY (and a companion case[1]).

Suffolk.    January 3, 1961. — March 9, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Landlord and Tenant,* Commencement of tenancy, Common incinerator, Landlord's liability to tenant or one having his rights. *Practice, Civil,* New trial.

This court of its own motion ordered a new trial of an action against the landlord of an apartment building for personal injuries sustained by a child of one of the tenants allegedly by reason of a defective common incinerator in the landlord's control where the judge hearing the action did not clearly determine the essential fact when the tenancy of the plaintiff's parent began.    [209–210]

In an action against the landlord of an apartment building for personal injuries sustained by a child of one of the tenants allegedly by reason of a defective common incinerator in the landlord's control, the time of the beginning of the parent's tenancy was left undetermined on a record containing merely a stipulation that when the accident occurred the parent was a tenant "under" a written lease made about a year previously and evidence that he had been a tenant for several years before the lease.    [210–211]

Two ACTIONS OF TORT.    Writs in the Municipal Court of the City of Boston dated April 3, 1959.

---

[1] The companion case is by June Ryan and another against the same defendant.

The actions were heard by *Glynn, J.*

*Charles W. O'Brien,* for the defendant.

*Robert P. Malone,* for the plaintiffs, submitted a brief.

KIRK, J. The two minor plaintiffs (hereinafter called plaintiffs) were injured when struck in the face by a hot, black, tarlike substance which, coincidental with an explosion, came from an incinerator under the control of the defendant at one of its housing units.

The judge found for the plaintiffs. The defendant claimed a report to the Appellate Division and a consolidated report was dismissed. The case is before us on the defendant's appeals from the order of dismissal.

The report states: "It was agreed that on July 5, 1958, the parents of the . . . plaintiffs were tenants of the defendant under written leases each dated June 1, 1957 . . . [which are in evidence], and that the defendant was in control of the incinerator."

A summary of the evidence follows: The parents of one of the plaintiffs had been tenants of the defendant at the project since 1953; the parents of the other since 1954. The incinerator, including the door, was then in good condition. The inside of it was clean. The rubbish in it was pushed down and burned once or twice a day, and the incinerator was cleaned by the defendant's employee. The accident occurred July 5, 1958.

The part of the project where the plaintiffs lived consisted of two units. The area between the two was used as a play area and clothes yard. The incinerator was located at the end of one of the buildings adjoining the play area. The incinerator was of brick, with a chimney from the ground to the top floor. The door of the incinerator was opened from the top to about a forty-five degree angle from the vertical plane of the brick chimney in which it was placed; inside the incinerator was a chute; when rubbish was placed on the chute and the door released, the door closed automatically. Below the chute was a firebox about six feet by four feet, which led to an ashpit room about eight feet below the level of the door of the incinerator.

Access to the door was gained by a platform which was two steps above the ground.

A week and a half before July 5, 1958, the hinge of the door of the incinerator was broken so that it could not be closed, and left an opening of six or seven inches at the top. At the same time the incinerator was so full of rubbish that the door was caused to remain open ten or twelve inches at the top. Complaint was made to the manager of the project on June 25, 1958, about the "mess" at the incinerator and the platform in front of it. The incinerator and platform were cleaned on June 27 and June 30. But by July 2, 1958, rubbish was "all piled up again" at the incinerator and platform and remained in that condition until July 5, 1958. On that day at 4 P.M. the mother of one of the plaintiffs found the incinerator jammed with trash. She burned it. When she left the incinerator at 5:15 P.M. the ashes were above the level of the door, and she could get the door only half shut. Shortly afterwards the two plaintiffs (a boy of eight years and a girl of seven years) were walking around the yard near the incinerator. They saw flames coming out of the top of the chimney. They ran to the incinerator. The boy climbed the two steps to the platform, and found the door of the incinerator open all the way. He tried to close it but was unable to do so. He was about to jump down from the platform when an explosion occurred sending "a whole bunch of black stuff . . . out of the incinerator" which hit both plaintiffs in the face. Trash and rubbish, some of which was charred and burned, were seen later in the vicinity of the incinerator.

The judge denied the following request for ruling made by the defendant in each case: "There is no evidence to warrant a finding that the . . . plaintiff sustained injuries as a direct and proximate consequence of the failure of the defendant to use ordinary care to keep the incinerator . . . in the condition in which it was or appeared to be *at the time of the letting of the demised premises to the . . . [parents] of the . . . plaintiff*" (emphasis supplied).

The judge made the following finding: "I find from the evidence that the injuries suffered by the plaintiff were the

direct and proximate consequence of the negligence of the
defendant in failing to use ordinary care in maintaining its
incinerator in as good a condition as it was *when the plain-
tiffs' parents became tenants of the defendant*" (emphasis
supplied).

We are of the opinion that there should be a new trial.
In view of this disposition we shall not dwell upon the ques-
tions of causation or the status of the plaintiffs.    The
source of the difficulty lies in the latent ambiguity of the
words "at the time of the letting" in the defendant's re-
quest and the equal ambiguity of the words "when the
plaintiffs' parents became tenants of the defendant" in the
judge's finding.    While the legal significance of the two
phrases may be the same, they both in context beg the ques-
tion as to when in fact the tenancy commenced, and upon
this fact the rights of the parties depend.    "Where the
facts on which the rights of the parties depend have not
been ascertained at the trial it is within the power of the
court in its discretion and of its own motion, to recommit
the case for retrial."    *Comstock* v. *Soule,* 303 Mass. 153,
159.    *Turgeon* v. *Turgeon,* 326 Mass. 384, 386.    *Mark* v.
*Kahn,* 333 Mass. 517, 522.    See *Coletti* v. *Hart,* 338 Mass.
174, 177–178.

Reading the report as a whole, we do not think that the
recital "It was agreed that on July 5, 1958, the parents of
the . . . plaintiffs were tenants of the defendant under
written leases each dated June 1, 1957 . . ." means that the
plaintiffs thereby intended that all the rights and duties of
the parties, including the duty of the defendant with re-
spect to the care and maintenance of the incinerator, should
be fixed and measured as of June 1, 1957.    Rather, we think
it means that the plaintiffs admit the fact of the existence
of the leases but assert their rights under the general rela-
tionship of landlord and tenant which began in 1953 for
one and in 1954 for the other.    If an entirely new tenancy
began June 1, 1957, the plaintiffs could not, on the record,
recover, because of the lack of evidence of the condition,
care and maintenance of the incinerator at that time.    The

finding by the judge suggests an implicit subsidiary finding that the tenancies began in 1953 and 1954. But the recited evidence on this point is too meager to support that conclusion.

We think it should be made clearly to appear either by the disposition of the request, or by the finding, when the tenancy began. In the case of *Chapman* v. *Standen,* 302 Mass. 4, at page 6, it was said: "It would be unreasonable to hold that every trifling alteration in the premises demised or in the relations of the parties necessarily has the effect of an entirely new tenancy upon the standard of maintenance of all the appurtenances in the landlord's control and throws upon the tenant the burden of reëxamining all of them or taking upon himself the consequences of the landlord's then unfulfilled obligations." Cf. *Dreher* v. *Bedford Realty, Inc.* 335 Mass. 385, 388, and cases cited; *Wheeler* v. *Boston Housing Authy.* 341 Mass. 510, 512. This principle and the nature of the particular installation persuade us that further inquiry must be made to resolve the doubt that the cases raise. The incinerator which the defendant admittedly controlled was a separate permanent structure, on the exterior of the building, specially designed and adapted to facilitate the disposal of trash and to promote sanitation on its premises by combustion. The landlord obviously intended that it be available as a receptacle for rubbish to all of the tenants in the units served by it, irrespective of where in these housing units the tenants lived.

Since we are unable to determine from the report whether the leases executed on June 1, 1957, made any alterations in the preëxisting relations of the parties and, if so, whether such changes were trifling or substantial, we think that the findings for the plaintiffs should be vacated. The order dismissing the report is reversed. A new trial is ordered. *Wayland* v. *Ware,* 109 Mass. 248, 251–252. G. L. c. 211, § 8.

*So ordered.*