' Whitehead, J.
Plaintiff, Rachel Marino, brings this action in her own right against the defendants, Nynex and the Massachusetts Electric Company, for injuries sustained when an automobile which she was operating struck a utility pole owned and controlled by the defendants and located on Route 1, North, in Saugus. She alleges negligent placement of the pole. Ms. Ma-rino also brings a separate action on behalf of her minor children, Charity Marino, Guy Marino and Joseph Marino, for loss of consortium. Ms. Marino’s parents, Bruce Blake and Helen Blake, as well, bring actions for loss of consortium. Defendant Nynex has moved for summary judgment on all claims. For the reasons stated below, the Court denies summary judgment.
FACTS
On March 19, 1992, while driving on Route 1, North, in Saugus, Rachel Marino lost control of her automobile and struck utility pole #156 near the entrance to the Dunham Shoe Store. The weather at *69 the time of the accident was cold and rainy, and the roadway was slippery.
Utility pole # 156 is located approximately seven feet from the paved roadway. It was installed by defendants Nynex and the Massachusetts Electric Company pursuant to a license granted them by the Town of Saugus, and it is maintained by them. The license designated the general area in which the pole might be placed. However, the exact placement was left to the discretion of the defendants.
The plaintiffs offered evidence by way of affidavits and deposition testimony to the effect that the paved roadway in the general vicinity of pole #156 is constructed in such a way as to increase the risk of vehicles leaving the roadway. Specifically, the roadway curves to the right; however, rather than being banked so that it is higher on the left side of the road than on the right, the road is higher on the right side. This tends to push vehicles off to the left. Drivers, in turn, may oversteer to the right and lose control of their vehicles. This condition, known as negative superele-vation, is discernable by visual inspection. The effect of such negative superelevation is enhanced by slippery road conditions.
Plaintiffs also offered evidence tending to establish that the area of Route 1 in which Pole #156 is located has been the scene of numerous automobile accidents, many of which occurred during rainy, cold weather. Some had involved collisions with utility poles. In fact, one Dunham Shoe Store employee testified that, during her seven and one-half year period of employment, she had witnessed a half-dozen or more accidents involving automobiles which had collided with Pole #156.
Plaintiffs further offered evidence from which one could infer that Nynex was, or should have been, aware of the collisions involving Pole #156 and other poles in the same general area. Nynex elected not to move Pole #156.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues as to any material fact and when the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976).
Nynex first contends that because it placed Pole #156 pursuant to a license from the Town of Saugus, it is immune from liability for negligence as a matter of law. At first appearance, NYNEX’S position seems to find some support in Curran v. Boston Elevated Railway, 249 Mass. 55 (1924). In Curran, the plaintiff was injured in a collision between a moving vehicle and a utility pole which was located in a public way. He sought to recover based upon theories of nuisance and negligence. The Supreme Judicial Court affirmed the trial court’s decision denying relief on either theory. With respect to the claim of nuisance, the Court stated “[T]he pole was located, erected and maintained under a license granted by lawful authority. It has been repeatedly held by this Court that such a license protects the licensee from liability on account of injuries sustained by others, provided the terms of the license are strictly complied with.” Id. at 57. The Court concluded, “(A]s it appears that the pole was erected and maintained in the highway by a license lawfully granted, the defendant cannot be held liable, even if without such a license the pole would be a nuisance.” Id. at 58. However, the discussion of license-based immunity was limited to the context of nuisance. With respect to the claim of negligence, the Court undertook a factual analysis of the claim and concluded that there was a failure of proof on the negligence claim. Explicit in the fact that such an analysis was undertaken is the proposition that a license to place a pole does not, as a matter of law, immunize a utility against a claim of negligence in the placement.
Subsequent to Curran, in Lynch v. First National Bank of Boston, 309 Mass. 458 (1941), the Court even more clearly indicated that while a license to place objects in a public way might relieve the placing party from claims in nuisance for injuries sustained as a result of such placement, liability for negligence may still exist. The Court sustained a directed verdict against the plaintiffs on the nuisance claim but reversed an order granting a directed verdict on the negligence claim. Id. at 462-63.
More recent decisions of the Supreme Judicial Court explicitly reject the proposition that a license may confer upon the licensee immunity for claims in negligence, or even nuisance. In Hub Theatres, Inc. v. Massachusetts Port Authority, 370 Mass. 153, cert. denied, 429 U.S. 891 (1976), the Court stated that “the manner in which a business or activity” which has been governmentally sanctioned or licensed, may be conducted “is not without limitations.” Rather, “it is subject always to the qualification that the [activity] must be carried on without negligence.” Id. Moreover, in Lummis v. Lilly, 385 Mass. 41 (1982), the Court declared, “It is settled that a license does not immunize the licensee from liability for negligence or nuisance which flows from the licensed activity.”
Accordingly, this Court concludes that the fact that Nynex placed Pole #156 in conformity with a license issued by the Town of Saugus does not preclude recovery by the plaintiffs for negligence.[3]
Nynex further contends that, regardless of the effect of the license which it possessed, as a matter of law it cannot be held liable for negligence to a plaintiff whose automobile has struck a pole located off the traveled portion of a roadway. It supports its contention with a host of authorities from other jurisdictions. Caldwell v. Commonwealth Penndot, 548 A.2d 1284 (Pa. Commlth. 1988); Mattucci v. Ohio Edison Co., 73 N.E.2d *70 809 (Ct. Of Appeals Ohio, 1946); Hemphill v. Mississippi Power Co. 84 F.2d 971, 972 (5th Cir., 1936); Oram v. New Jersey Bell Tel. Co., 132 N.J. Super. 491, 334 A.2d 343 (1975); Parsons v. Chesapeake and Potomac Tel. Co., 181 Md. 502, 30 A.2d 788 (1943); Hayes v. Malken, 26 N.Y.2d 295, 258 N.E.2d 695 (1970); Zibban v. Cayuga County, 14 N.Y.2d 573, 198 N.E.2d 47 (1964); Boylan v. Martindale, 431 N.E.2d 62, 71-72 (Ill.App. 1982); Mancaniello v. Guile, 260 A.2d 444 (Conn. 1964).
A reading of these authorities reveals that, almost universally, they turn on the question of proximate cause. That is to say, in each case, the Court has found no liability because the collision which occurred between vehicle and pole was deemed not to be a legally foreseeable event. The public policy favoring placement of utility poles along highway rights-of-way and the state practice of regulating such placement are such that the occasional random accident is reviewed as just that: an occasional random accident, for which the utility should not be held accountable. However, some of the same authorities have held out the possibility of liability where unique circumstances attendant to the placement of the pole render the collision in question something more than random. See, e.g., Caldwell v. Commonwealth, Penndot, supra at 1286; Boylan v. Martindale, supra at 70-71.
In the present case, just such a scenario is alleged, and the allegation finds support in the summary judgment record. The plaintiff has raised an issue of fact as to whether the atypical engineering of the highway in the area of the pole and/or other factors have combined with the placement of the pole in a way that so enhances the risk of collision as to bring that risk within the realm of legal foreseeability. Compare Nelson v. Duquesne Light Company, 338 Pa. 37, 12 A.2d 299 (1940) (liability found where pole was placed in uniquely dangerous location). See also Kubala v. Dudlow, 17 Ill.App.2d 463, 150 N.E.2d 643 (1958) (placement of barriers by private individual on private property but in area of dangerous curve could serve as basis of liability when vehicle collided with barriers). Contrast Glicke v. Prince Italian Foods of Saugus, 25 Mass.App.Ct. 901 (1987) (no liability for collision between automobile and restaurant when facts showed collision to be random event). That being so, the authorities advanced by Nynex become inapposite, and an issue exists for the jury’s consideration.
Nynex also contends that the parents of Rachel Marino have failed to meet the requirements of G.L.c. 231, §85X which must be met in order for them to recover for loss of consortium. Specifically, Nynex contends, they have not shown that Ms. Marino was financially dependent on them. See Monahan v. Methuen, 408 Mass. 381, 390 (1990). The record of Ms. Marino’s financial dependence upon her parents is vague. Her mother characterized her as “not completely independent . . . [b]ecause there were times when she might have needed some assistance on financial matters.” On the other hand, the mother acknowledged that “for the most part [Ms. Marino] was financially independent prior to the accident.” An affidavit submitted by the mother states, “Both before and after [the accident] my husband and I provided [Ms. Marino] with financial assistance from time to time as she needed it. Included in these periodic payments was $10,000 in 1988 or 1989 to assist her in purchasing a home and approximately $1,100 in 1992 after the accident for root canal work and crowns.” Given this factual ambiguity and given the ambiguity in G.L.c. 231, §85X as to how financially “dependent” an adult child must be in order to warrant a loss of consortium claim by her parents, the Court must deny Nynex summary judgment on the claim for loss of consortium as well.
ORDER
It is hereby ordered that NYNEX’S motion for summary judgment be denied.

The Court also observes that the license did not dictate that Pole #156 be placed precisely where it was placed. Rather, it gave Nynex broad discretion to place poles at 150-foot intervals along a 50-foot-wide strip adjacent to the roadway.