COMMONWEALTH *vs.* BRIAN J. EAGAN.

Middlesex. April 6, 1970. — June 8, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Practice, Criminal*, Fair trial, Newspaper article, Mistrial, Judicial discretion. *Evidence*, Other offence, Relevancy and materiality. *Error*, Whether error harmful.

There was no error at the trial of an indictment arising out of a kidnapping in the denial of a motion for a mistrial based on articles published in the morning editions of newspapers on the second day of the trial and relating that the defendant had been arrested for carrying a "sawed-off" shotgun in an automobile on the way to court, where the judge polled the jury collectively as to whether any of them had read the articles and, although all the jurors reported seeing at least one of the articles, none, except one who was excused, indicated that the articles would affect his deliberation and the judge then instructed the jurors to disregard the articles and later instructed them to determine guilt or innocence "on the evidence . . . and on the law . . . and not on the basis of anything else." [588–589]

At the trial of an indictment for being an accessory after the fact to a kidnapping, evidence that during the period thereof one of the principals beat the victim and attempted to crush him with a boulder just before the principals and the defendant left the scene in the defendant's automobile was relevant to the crime with which he was charged and was admissible even though it tended to prove that he had committed another crime. [589–590]

At the trial of an indictment for being an accessory after the fact to a kid-
napping, there was no error in the denial of a motion for a mistrial in
that a police officer in an unresponsive answer to a question stated
that he had placed the defendant and the principals "under arrest for
attempted murder" where the judge promptly put the answer out of
the case by clear and forceful instructions to the jury and evidence
had already been properly admitted of a beating administered to the
victim by one of the principals. [590–591]

At a criminal trial, where a police officer testified that after informing
the defendant of his rights and asking him if he cared to discuss the
case the defendant relied on his rights and remained silent and the
officer thereupon discontinued the questioning, denial of a motion for
a mistrial then made and based on a contention that the admission of
such testimony implied an admission of guilt revealed no reversible
error in as much as such testimony contained no accusations against
the defendant and the judge promptly instructed the jury that the
defendant had a constitutional right to remain silent and that the jury
should "not hold anything against . . . [him] because . . . [he]
refused to answer anyone's questions." [591–592]

INDICTMENT found and returned in the Superior Court on
September 5, 1968.

The case was tried before *Hale*, J.

*Robert A. Stangiani* for the defendant.

*Francis K. Monarski*, Assistant District Attorney, for the
Commonwealth.

SPALDING, J.   The defendant was convicted under an
indictment charging him with being an accessory after the
fact to the crime of kidnapping.   G. L. c. 274, § 4.   The
indictment was tried with two indictments, in which
Charles J. Flynn and Paul Souza, respectively, were charged
with the crime of kidnapping.   The trial was subject to
G. L. c. 278, §§ 33A–33G.   The case is here on Eagan's
appeal.

The alleged crime grew out of an incident that occurred
in Tewksbury on August 25, 1968.   The Commonwealth
presented evidence of the following.   One Manuel Nobrega,
a self-confessed bookmaker of Lowell, testified that he was
threatened by Flynn when he refused to join him in his
"wire-service business."   Eagan arranged a meeting between
Nobrega and Flynn on August 25, 1968, at the Branding
Iron Restaurant in Tewksbury.   Nobrega agreed to meet

Flynn there, but told Eagan that he would be carrying firearms. On the day in question he left for the meeting with a shotgun, a "real pistol," and a "starter's pistol" in his car, a Chevrolet. Immediately after turning off the motor of his car in the parking lot of the restaurant, he was struck in the face, through the car window, by Flynn. After daring Nobrega to come out, Flynn then entered the back seat and began beating him. Flynn also wrested the shotgun, which was on the front seat, from Nobrega and gave it to Paul Souza, who walked off with it. During the struggle Nobrega fired two shots from the starter pistol. Souza, at the direction of Flynn, then drove the victim's car away toward Tewksbury, while Flynn, from the back seat, held and beat Nobrega. In the vicinity of Clark Road, Andover, Nobrega finally freed himself and escaped on foot. Flynn pursued and caught up with him, and began beating him again. At one point Flynn attempted to crush Nobrega with a boulder while he was lying on the ground, but Souza was able to deflect it from Nobrega's head. Eagan, Flynn and Souza then drove away.

One Mel Cook testified that while leaving the restaurant in the automobile of one James Shanley, he noticed a Chevrolet in front of their car and a Thunderbird directly behind them. In the Chevrolet a man in the back seat was continuously beating a man in the front seat on the passenger's side. Shanley testified to the same effect. He identified Nobrega as the victim, Souza as the driver of the Chevrolet, and Eagan as the driver of the Thunderbird.

Officer Manley of the Tewksbury police department testified that Eagan, Flynn and Souza came into the police station on the afternoon of August 25, and reported "a little trouble" at the Branding Iron Restaurant. Flynn stated that someone had tried to kill him. Manley noticed blood on Flynn's hands and shirt, which Flynn admitted was the "other fellow's."[1]

---

[1] Eagan took the stand and gave a version of the incident materially different from that recited above, but it need not be set forth, since it is not material to any of the questions hereinafter discussed.

1. On the second day of the trial the morning editions of the Boston Globe and Boston Herald-Traveler newspapers carried articles relating that Eagan, Flynn and Souza were arrested for carrying a "sawed-off" shotgun in an automobile on the way to court. Upon the recommendation of the prosecutor and defence counsel, the court polled the jury collectively as to whether any of them had read the newspaper articles or had heard broadcasts. All members of the jury and two alternates reported seeing at least one of the articles. The judge then asked the jurors whether this fact would "affect . . . [their] honest deliberation" of the case and whether they could decide the case solely on the basis of evidence introduced at the trial. One juror who said that the articles might affect her deliberation was excused and replaced by an alternate. None of the other jurors indicated that the articles or broadcasts would affect his deliberation. The judge then instructed the jury at some length to disregard news articles in reaching their decision. Later in his charge, he told the jury that the guilt or innocence of Eagan, Flynn and Souza was to be determined "on the evidence that you have heard and on the law as I give it to you, and not on the basis of anything else."

The defendant argues (assignment no. 1) that it was error for the trial judge to refuse to grant his motion for a mistrial once he had learned that the jury had read news articles prejudicial to him. The defendant bases this argument on the alleged highly prejudicial nature of the articles, on the judge's failure to poll each juror separately, and on the assertion that limiting instructions could have little effect on the impact of these articles. We disagree.

The question whether prejudice has been engendered in a jury by newspaper publicity is a question in which the trial judge has large discretion. Whether a judge has abused his discretionary powers is to be determined by the special facts of each case. *Marshall* v. *United States,* 360 U. S. 310. In view of the trial judge's prompt actions to offset any prejudice we cannot say that he abused his discretion in deciding

that the publication of the articles had not prevented the defendant from receiving a fair trial. He promptly inquired of the jury whether they had been exposed to the prejudicial publicity, and whether it impaired their impartiality in deciding this case. See *Commonwealth* v. *Crehan*, 345 Mass. 609, 615. The judge is not required to poll each juror individually. See *United States* v. *Pisano*, 193 F. 2d 355, 360, 361 (7th Cir.). Nor must he extend the inquiry once a juror who has admitted exposure to the publication complained of affirms his ability to decide the case according to the evidence. *Commonwealth* v. *Subilosky*, 352 Mass. 153, 159. As noted, the judge also instructed the jury immediately after the poll to disregard the newspaper stories. We see no reason to depart from our rule that jurors are expected to follow instructions to disregard matters withdrawn from their consideration. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645. *Commonwealth* v. *Crehan, supra*, at 613. Compare *Commonwealth* v. *Sarro*, 356 Mass. 100; *Commonwealth* v. *Carita*, 356 Mass. 132; *Bruton* v. *United States*, 391 U. S. 123. In view of the jurors' indication of impartiality, the instructions here were "sufficiently strong to accomplish . . . [the] purpose" of counteracting the effect of the withdrawn matter. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611.

2. The Commonwealth introduced evidence of the attempt by Flynn to crush Nobrega with a boulder as well as the other events that occurred on Clark Road. The defendant argues (assignment no. 4) that since such evidence pertains to an indictment pending in another jurisdiction,[1] it was irrelevant and improperly admitted. But the mere fact that evidence tends to prove the commission of some other crime does not render it inadmissible as long as it is relevant to the crime being tried. *Commonwealth* v. *Lamoureux*, 348 Mass. 390. *Commonwealth* v. *White*, 353 Mass. 409. The question thus is whether the testimony

---

[1] The defendant was also indicted by the Essex County grand jury for attempted murder.

of the beating is relevant to the crime of which the defendant was charged, i.e. being an accessory after the fact to kidnapping. Of course, proof of the commission by the principal of the crime of kidnapping was essential to the Commonwealth's case against Eagan. *Commonwealth* v. *Tilley*, 327 Mass. 540, 546. Here the period of kidnapping extended from the time that Flynn and Souza drove Nobrega away to the moment they finally relinquished control. His abortive escape, which led to the events on Clark Road, was thus within the period when Nobrega was under their control. Furthermore, evidence of the force employed against Nobrega is relevant to the allegation that he was held against his will. This evidence illuminates the defendant's intent, and the significance of his action in aiding Flynn and Souza to leave the scene. Since this testimony was relevant to the kidnapping there was no error in admitting it.

3. Officer Parker of the Andover police was called by the Commonwealth. He testified that in the course of his investigation of the offences here involved he went to the Tewksbury police station in the late afternoon on August 25, 1968, where he saw Eagan, Flynn and Souza. After stating that he had warned them of their rights and talked with them, he was asked the following question: "Now, sir, you gave them their legal rights and you asked them if they wanted to talk about an incident in Andover. What else did you talk about at this time in this place with the defendant?" Officer Parker answered that he "[p]laced them under arrest for attempted murder." This answer, of course, was not responsive but the defendant did not move that it be struck. Instead, he moved for a mistrial. The motion was denied subject to his exception. Assignment no. 3. The judge promptly put the answer out of the case in the following instructions to the jury: "There has . . . been a statement by the witness with respect to . . . [having] arrested . . . [the defendant] on a particular charge. That is absolutely nothing for you to consider. I instruct you to disregard that and put it out of your mind.

I know nothing about that charge myself, and I don't know . . . if it ever was carried beyond that particular point or not, and we are not going . . . into it, because it is not material in this case, and you will disregard it." In view of these clear and forceful instructions, the judge was amply justified in denying the defendant's motion. It would be a reproach to the administration of justice if the only course open to a judge is to grant a mistrial whenever some piece of incompetent or immaterial evidence gets into a case. Otherwise, few trials would ever be completed or be immune from reversal on appeal. As we said in *Commonwealth* v. *Smith*, 342 Mass. 180, 188 (quoting from *People* v. *Kingston*, 8 N. Y. 2d 384, 387), "Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial. On review, the court's inquiry must be directed toward determining whether the claimed defect influenced the jury and tainted . . . [the] verdict. If the record demonstrates that it did not, then, the defendant is not entitled to a second trial." We might add that it is difficult to see how any substantial harm was done to the defendant by Officer Parker's remark. Several witnesses had already described the beating administered to Nobrega. In this context Officer Parker's statement that he had arrested Eagan, Flynn and Souza for attempted murder did not add appreciably to any prejudice already engendered by the description (properly admitted) of those events.

4. Later in the course of his testimony, Officer Parker testified that he informed Eagan, Flynn and Souza of their rights. In response to a question whether he had a conversation with them "relative to these cases," he stated that he "asked them if they would care to discuss the incident that took place on Clark Road, Andover, with . . . [him]. The three of them said no, they understood their rights and they would exercise them and would not talk to . . . [him] on that subject." The officer thereupon discontinued the questioning. The defendant did not ask that this testimony

be struck but moved for a mistrial, and his exception to the motion's denial is the subject of his second assignment of error. The defendant argues that the admission of this testimony was reversible error because it implied an admission by him that he was guilty of the crime charged. The defendant's reliance on *Commonwealth* v. *Burke,* 339 Mass. 521, is misplaced. There testimony regarding an extensive interrogation and accusations by a police officer of a defendant, who persistently refused to answer in the absence of his lawyer, was held to be reversible error. Here the question asking for the conversation was unobjectionable. The answer, however, was objectionable, for the defendant's claim of silence could not be treated as an implied admission. It is to be noted that here no accusations were made against the defendant. Officer Parker's testimony revealed only that the defendant saw fit to rely on his rights and remain silent. But any possible harm that this evidence might have done to the defendant was eliminated promptly by the judge. He told the jury in clear, forceful language that the defendant had a constitutional right to remain silent and that the jury should "not hold anything against . . . [him] because . . . [he] refused to answer anyone's questions." The defendant took no exceptions to these instructions. The judge did not err in denying the defendant's motion for a mistrial.

*Judgment affirmed.*