COMMONWEALTH *vs.* EARL RICHARDS.

Middlesex.    December 5, 1972. — March 13, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Robbery. Assault. Accessory. Practice, Criminal,* Mistrial; Exceptions: failure to save exception. *Error,* Whether error harmful.

At a trial for armed robbery, failure by the judge to instruct the jury that in order to convict the defendant they must find not only a threat or display of force by the defendant but also actual fear of harm on the part of the victim was not error where in instructing the jury the judge had distinguished between theft through violence and theft through assault and putting in fear, as well as between larceny and robbery, and there was evidence on which the jury could find that the victim had in fact felt fear.  [302–305]

In order to find the defendant in a criminal trial guilty of an assault with intent to murder committed by an accomplice in the course of a robbery, it must be shown that the defendant assisted his accomplice in the commission of the crime and shared with his accomplice the requisite intent to murder.  [307]

Where there was evidence in a criminal trial that the defendant had planned a robbery, had furnished his accomplices with loaded guns, and had participated in the robbery during which an accomplice shot a policeman, the defendant could be found guilty of assault with intent to murder.  [308]

There was no error in the denial of a motion for a mistrial of a criminal case after a witness for the Commonwealth during cross-examination made an unresponsive remark attributing earlier criminal activity to the defendant, where the judge promptly and clearly instructed the jury to disregard the statement and a strong case against the defendant had been made by the Commonwealth. [308–310]

This court did not consider, as an asserted ground for a new trial of a criminal case, an unresponsive statement made by a witness for the Commonwealth without objection or exception by defence counsel.  [310]

INDICTMENTS found and returned in the Superior Court on January 12, 1970.

The cases were tried before *Leen, J.*

*Francis C. Lynch, Jr.,* for the defendant.

*Barbara A. H. Smith,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J.   Earl Richards and Robert Richards, brothers, were each indicted for the crimes of assault on Richard Farrell, a police sergeant, with intent to murder; assault and battery upon Sergeant Farrell by means of a dangerous weapon; and armed robbery from the person of John Tucker, an employee of a supermarket.   The brothers were tried together before a Middlesex County jury.   At the close of the Commonwealth's case, the judge directed a verdict for Robert Richards, the younger brother, with respect to the charge of assault with intent to murder.   At the close of the trial, the jury found Robert Richards not guilty of the remaining two charges. They found Earl Richards (the defendant) guilty of all three charges.   The case is here on appeal from the ensuing judgments of conviction under G. L. c. 278, §§ 33A–33G, with the defendant claiming error in the judge's instructions as to the armed robbery charge; his refusal to direct a verdict for the defendant on the charge of assault with intent to murder; and his refusal to order a mistrial by reason of two prejudicial (and unresponsive) statements made by a witness for the Commonwealth during cross-examination.

Under the jury's verdicts, we may take it that the facts were as follows.   On the morning of October 28, 1969, the defendant arranged to meet one George Abbott and one George Hartnett at a bar in South Boston.   The three then picked up Robert Richards, and all proceeded to Maynard, Massachusetts, in two cars, a Rambler and a Pontiac.   Arriving in Maynard, they stopped at a car repair shop called J & E Auto Body owned by John Rich, the defendant's brother-in-law.   About 1:30 or 1:45 P.M., the four men set out in the Rambler toward Stow, Massachusetts, leaving the Pontiac at the shop.   The defendant was driving.   When still some distance from Stow, he pulled the car over to the side of the road and stopped it.   He said they were "going up the road to pick up a piece of change."   He handed Hartnett a .22 caliber automatic and a false mustache, and handed Abbott a paper

bag containing a .38 caliber pistol. The weapons were loaded.

As the party started again toward Stow, the defendant told Abbott to take the manager of the store into the office; Hartnett would back up Abbott, and the defendant would back them both up. Robert Richards was to stay in the car.

The store to be robbed was the Purity Supreme Market in Stow. It was reached some ten or fifteen minutes after the party left Maynard. The defendant parked the car in a parking space adjacent to the store. Following the plan, Abbott and Hartnett entered the store and sought out Tucker, the assistant manager. Abbott showed Tucker the gun in his trouser belt and ordered Tucker to go to the office. Hartnett remained in the store proper. Tucker, with Abbott close behind, walked to the office, and signalled to a Mrs. Emma Huntley, the bookkeeper, to open the door of the office, which she did. Tucker and Abbott entered. Abbott now had the gun in his hand and pointed it at Tucker and Mrs. Huntley. At Abbott's direction, Tucker and Mrs. Huntley took bills from the office safe and loose bills and rolled coins from the cashier's cage in the front of the office and stuffed them into a paper bag provided by Abbott. In the course of these movements, Mrs. Huntley contrived to pull a button that set off an alarm in the Stow police station.

Sergeant Farrell, on duty at the police station, reached the Purity store by car in perhaps two minutes and on entering exchanged a word with Mrs. Huntley who was in the cashier's cage. Meanwhile Tucker had left the office followed by the defendant carrying the paper bag. Tucker saw Sergeant Farrell and evidently shouted to him, and then ducked or crouched. Farrell yelled to Abbott to stop; [1] Abbott dropped the bag, turned toward a nearby wall, and raising his hands over his head, pressed them to the wall.

---

[1] Abbott testified that Farrell shot at him but this is doubtful.

By this time Hartnett had approached Farrell from the rear and was within a few feet of him. Farrell had barely seen Hartnett when Hartnett shot at Farrell perhaps four times. Farrell fell to the floor seriously injured. He had been shot near the eye and in the head.

Abbott and Hartnett fled from the store toward the waiting car. There was evidence that the defendant had been standing near the car. With the defendant again driving, the Rambler with the four occupants made its way back to the repair shop in Maynard. After waiting a few hours there, the defendant and Robert Richards returned to Boston in the Pontiac; Abbott and Hartnett returned in a Chevrolet with the defendant's sister. The Rambler apparently remained at the shop.

1. Upon this record, the defendant assigns as error that in instructing on armed robbery the judge did not make it clear (so the defendant argues) that the jury, in order to convict, would have to find not only threats or displays of force by the actor, Abbott, but actual fear of harm on the part of the victim.

Under our statutes, as at the common law, robbery may be encompassed in either of two ways: by force applied to the person, with intent to steal, or by an assault putting the person in fear, with the same intent. G. L. c. 265, § 17 (armed robbery), § 19 (robbery by unarmed person); c. 277, § 39 (construction of words used in indictment). *Commonwealth* v. *Novicki*, 324 Mass. 461, 465. *Commonwealth* v. *McCarthy*, 360 Mass. 566, 567–568. See *Commonwealth* v. *Humphries*, 7 Mass. 242, 244; *Commonwealth* v. *Clifford*, 8 Cush. 215, 216; *Commonwealth* v. *Nickologines*, 322 Mass. 274, 276–277; *Commonwealth* v. *Mahoney*, 331 Mass. 510, 513; *Commonwealth* v. *Jones*, 362 Mass. 83, 86. The Commonwealth did not claim that the defendant committed a battery upon Tucker, but relied on the other alternative, and this focused attention on the extent to which apprehension must be charged and proved.

Discussion of this subject between the court and coun-

sel was rather confused, but it appears that the charge given was adequate.

At a bench conference after the judge had given his main instructions there was a spirited debate about the need to instruct that Tucker must be shown to have experienced fear when confronted with Abbott's pistol and commands. The judge said during the colloquy "fear was not a necessary element; . . . the perpetrator should be judged by what he does." For this proposition he relied on *Commonwealth* v. *Slaney,* 345 Mass. 135.

That case considered the essentials of a simple criminal assault, not a robbery, and, reverting to the oldest conception of assault, said that it could be made out by proof of an attempted but unaccomplished battery without regard to whether the victim was put in fear. The defendant there had shot at the person but missed. That would be enough, according to the court's reasoning, even if the person was unaware of the attempt on him; he might indeed have been asleep at the time. In this sense the accused was judged by what he did without regard to its effect on the mind of his victim. *Commonwealth* v. *Slaney, supra,* at 138–139. See Perkins, Criminal Law (2d ed.) 114–122. The *Slaney* case, however, did not deny — what is clearly envisioned by our decisions — that an assault could consist, alternatively, of putting a person in fear, as by the defendant's displaying a gun and the person's apprehending the danger, even if the defendant did not intend to shoot and in fact did not have the ability to do so effectively because his gun was not loaded. See *Commonwealth* v. *White,* 110 Mass. 407, 409.

If we take the first form of assault mentioned, the mere attempted battery where the person is unaware of the attempt, it is doubtful whether this could ever satisfy the conditions for robbery by force: a battery of some sort seems requisite, which is the means of or facilitates the theft. *Commonwealth* v. *Jones,* 362 Mass. 83, 86–87. In this respect the *Slaney* case has only a dubious

bearing on robbery. The alternative form of assault referred to in the *Slaney* case, that in which the person senses that force may be used and is thereby put in fear, does meet the robbery requirement when the fear facilitates the theft, see *Commonwealth* v. *Novicki*, 324 Mass. at 465; *Commonwealth* v. *Jones, supra*, at 87, but then it cannot be said the actor is judged by what he does without regard to the victim's reaction. Nor does the *Slaney* case consider whether actual apprehension on the part of the victim may be simply assumed, and mention of it omitted from the instructions, when proof is abundant that the weapon was displayed as a threat and the victim recognized it as such.

The *Slaney* case is thus not dispositive of the question whether it would be error to fail to instruct the jury that they could bring in a verdict of guilty on the armed robbery charge only if they found that Tucker was in fact put in fear. We have not, however, that precise question to decide, because, as the judge said, he had "bent over backwards" in delivering his main instructions; he had dealt in general terms with the issue of putting in fear. He had distinguished between theft through violence and through assault and putting in fear, and he had spoken of actual force in distinction from "constructive" force — "such as," he said, "threatening words or gestures or the display of a deadly weapon, which operates on the mind of the person to be robbed. That is what you would require as far as the assault part is concerned." The judge went on to mark the difference between larceny and robbery, contrasting theft by stealth with theft by force or fear. If the instruction on the matter of fear was not as detailed as the defendant might have wished, the fault seems to us extenuated by the fact — which the defendant candidly concedes in his brief — that there was evidence on which the jury might find that Tucker had in fact felt fear and had yielded on that account to Abbott's orders. Indeed it is hard to see how the jury could have found otherwise. In similar circumstances, the court in *United States* v. *Rizzo*, 409 F. 2d 400, 403

(7th Cir.), excused an entire omission to instruct on the issue of actual apprehension. See *United States* v. *Beasley,* 438 F. 2d 1279, 1282 (6th Cir.). See also *Commonwealth* v. *Barker,* 311 Mass. 82, 92–93; *Commonwealth* v. *Aronson,* 330 Mass. 453, 457. Cf. *Commonwealth* v. *Chapman,* 345 Mass. 251, 255; *Commonwealth* v. *Slaney, supra,* at 137, 141.

2. With respect to the armed robbery charge, just considered, there is no claim by the defendant that he was not equally responsible with Abbott even though it was Abbott, not the defendant, who wielded the gun. In a second assignment of error, however, directed to the charge of assault on Sergeant Farrell with intent to commit murder, the defendant contends that he should not be held to share responsibility with Hartnett; there was not enough evidence, he says, to tie him to the offence committed by Hartnett, especially the intent requisite to that offence, and the judge erred in refusing to direct a verdict.

The defendant does not attack the judge's instructions on this phase of the case, that is, the range of accessorial responsibility. These instructions were, in fact, finally formulated with the coöperation of the defendant's counsel. In his main instructions the judge emphasized that a specific intent to murder Farrell must be found — "one must have it in his mind to do this particular act"; of course, the defendant had not pulled the trigger but he had handed out the guns; did he have the intent, the judge asked, "knowing where they [Abbott and Hartnett] were going and what they were going to do, that if the occasion arose and it was necessary in order to make good the completion of this crime, whether it was in the actual commission or getting away after the crime was committed, did he have the intention that this [the loaded gun] was to be used on Richard Farrell or on any police officer who might happen on the scene, or a civilian, for that matter, an employee of the store? If he had, if he had such an intention, then it is for you to say whether or not he had a specific intent to murder Richard Farrell." The judge then went on to define murder and to

relate it to the facts of the shooting.  After discussion with counsel the judge added for caution's sake that the defendant must be found to have had a specific intent that the assault which he was procuring should result in murder in the first or second degree.  The judge did not think this added anything material to the more graphic instruction previously given, nor do we, at least if the language is read in relation to the picture developed at trial.

Before considering whether the jury could have found facts satisfying the instructions — the precise question put by the present assignment of error — we should note that the Commonwealth now appears to quarrel with the instructions.  It suggests that when a number of persons join in a criminal enterprise (here the commission of armed robbery), then each person should be held responsible for any crime committed by any of his partners which follows naturally and probably from the carrying out of the enterprise.  It would not matter that that crime was predicated on an intent (here the intent to murder) that was not shared between the actual perpetrator and the others.

In urging this broad conception of criminal complicity, the Commonwealth makes an argument analogous to that once made to support the proposition that a person who is guilty of the crime of conspiracy should be ipso facto also guilty of substantive offences committed by any of the other conspirators in furthering the conspiratorial undertaking.  That argument has been firmly rejected in the Commonwealth.  "One is punished for his own blameworthy conduct, not that of others." *Commonwealth* v. *Stasiun,* 349 Mass. 38, 48 (see at 47–49). *Commonwealth* v. *Perry,* 357 Mass. 149, 151–152.  See *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 355–356.  Am. Law Inst., Model Penal Code, Proposed Official Draft (1962) § 2.06 (3) ; see Tent. Draft No. 1 (1953), Commentary, pp. 20–26, on predecessor § 2.04.  LaFave & Scott, Criminal Law, § 65.  Cf. Wechsler, Jones & Korn, The Treatment of Inchoate Crimes in the Model Penal Code

of the American Law Institute: Attempt, Solicitation, and Conspiracy, 61 Col. L. Rev. 957, 957–958. A broad conception of complicity is indeed at work in the special field of so called felony-murder, but there is no basis for importing it into the present case, where murder did not occur. Compare G. L. c. 265, § 1; *Commonwealth* v. *Devereaux*, 256 Mass. 387, 395; *Commonwealth* v. *Lussier*, 333 Mass. 83, 93–94; *Commonwealth* v. *Devlin*, 335 Mass. 555, 567.

It is only fair to judge the defendant by the narrower standard adopted by the court below with the help of defence counsel. That standard, moreover, finds support in the authorities, although the subject has sometimes been obscured by equivocal or even self-contradictory language. In order to hold the defendant as an accessory before the fact [2] to the crime of assault with intent to murder, the principal must first be shown to be guilty of that offence. See *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 353; *Commonwealth* v. *Reynolds*, 338 Mass. 130, 135. As to Hartnett there was evidence for all the elements of the crime. He could be found to have shot at Farrell intending to kill him or at least knowing that there was a substantial chance of killing him; [3] the circumstances were such that if death ensued, Hartnett could have been found guilty of murder. See *Commonwealth* v. *McLaughlin*, 12 Cush. 615, 618–619; *Commonwealth* v. *Reynolds*, 120 Mass. 190, 197; *Commonwealth* v. *Demboski*, 283 Mass. 315, 322–323; *Commonwealth* v. *West*, 357 Mass. 245, 250. Second, guilt of the accessory is established when it is further shown that he intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the

---

[2] General Laws c. 274, § 2, states that accessories before the fact shall be indicted, tried, and punished as principals. See *Commonwealth* v. *Benjamin*, 358 Mass. 672, 680.

[3] This required intent is often referred to as "specific" but the characterization does not facilitate analysis. See LaFave & Scott, Criminal Law, § 28; Am. Law Inst., Model Penal Code, Proposed Official Draft (1962) § 202; Tent. Draft No. 4 (1955), Commentary, pp. 124–125.

mental state required for that crime. *State* v. *Hickam*, 95 Mo. 322, 332–333. *State* v. *Taylor*, 70 Vt. 1, 9–11. See *Commonwealth* v. *Kaplan*, 238 Mass. 250, 254; *Commonwealth* v. *Alba*, 271 Mass. 333, 338–339; Am. Law Inst., Model Penal Code, Proposed Official Draft (1962) §§ 2.06 (3)–(4); Tent. Draft No. 1 (1953), Commentary, pp. 24–26, 34, on predecessor § 2.04 (3)–(4); Perkins, Criminal Law (2d ed.) 662. But it would suffice if the purpose to murder in the mind of the accessory was a conditional or contingent one, a willingness to see the shooting take place should it become necessary to effectuate the robbery or make good an escape. *State* v. *Taylor*, *supra*, at 11. See Am. Law Inst., Model Penal Code, Proposed Official Draft (1962) § 2.02 (6), on conditional purpose; Tent. Draft No. 4 (1955), Commentary, p. 129, par. 8. The defendant here could be found to have assisted in the assault, and he could likewise be found to have had the requisite intent to murder. He was the ringleader and planner. He gave the others a scheme for the robbery in which they were to lend one another support in stealing the money and getting away. To these ends the defendant furnished deadly weapons. The guns were loaded and the jury could find that they were intended for use if the need should arise, and were not merely for display. *People* v. *Poplar*, 20 Mich. App. 132, 139–140 (similar though less compelling facts; guilty verdict upheld). Cf. *Commonwealth* v. *Perry*, 357 Mass. 149, 151–152.

3. A third assignment of error relates to an untoward occurrence at the trial which came about despite the control exercised by the trial judge during the proceedings. Abbott, who had pleaded guilty to indictments against him arising from this robbery, but had not been sentenced, testified as a witness on behalf of the Commonwealth. Under cross-examination by counsel for Robert Richards, he was asked, "Now, you have been on other jobs with Hartnett,[4] haven't you?" to which Abbott

---

[4] Harnett had pleaded guilty to charges arising from the robbery and had received sentence. He did not testify.

answered, "I have been on other jobs with Hartness [meaning Hartnett] and Richards." (The jury could have understood the reference to be to the defendant Earl Richards.) Counsel for the defendant moved that the gratuitous reference to Richards be struck, which was done; he then moved for a mistrial, which was denied, and it is this denial that is assigned as error. The judge instructed the jury, promptly and forcefully, to disregard the witness's volunteered statement. The defendant contends that the prejudice generated by this attribution of earlier criminality, which could serve no legitimate probative purpose, compare *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815–816, was ineradicable and so serious as to warrant a mistrial; but we agree with the judge that the trial was not thus corrupted. The statement was not elicited by the Commonwealth. It came when the trial was well under way and the triers' minds were fully engaged on the issues of fact. The case made against the defendant was strong even though the Commonwealth relied mainly on the testimony of Abbott, a confessed participant in the robbery with some personal stake, as he might have thought, in seeing the defendant convicted. The defendant offered an hypothesis as to the events in suit that might clear him, but it was weakly supported. We should not assume that the judge's instructions were without effect. *Commonwealth* v. *Crehan,* 345 Mass. 609, 613, and authorities cited. *Commonwealth* v. *Eagan,* 357 Mass. 585, 590–592. See *Commonwealth* v. *Cabot,* 241 Mass. 131, 150–151. The jury showed a discriminating judgment in finding Robert Richards not guilty, and this adds to our confidence that their finding with respect to the defendant was based on the evidence properly before them. A court's assessment of the effect of prejudicial matter can never be certain; it should take in the whole case including atmospheric factors operating in the course of trial, but the latter cannot be altogether recaptured even when the whole transcript is read and appreciated. Nevertheless we feel safe in concluding on the whole that it is highly

probable the jury would have voted the same way if Abbott's unresponsive statement had not been made. *Commonwealth* v. *Eagan, supra,* at 590–591. *Commonwealth* v. *Bottiglio,* 357 Mass. 593, 598.

The defendant also complains of another unresponsive statement by Abbott during the same cross-examination. He was asked how many times he had talked to Lieutenant Burns after he surrendered to the police, and he answered, "I don't know. I was given a lie-detector test in Charles Street, I talked to him." Counsel persisted, "I asked how many times," and Abbott finally said four times. Defence counsel passed over Abbott's reference to the lie-detector test without any objection or comment, but now seeks to make it a ground for a new trial. The situation is not one in which we are inclined to excuse the absence of timely objection and exception and to consider the point although not presented for review as orderly procedure requires. Compare *Commonwealth* v. *Conroy,* 333 Mass. 751, 756–757, and *Commonwealth* v. *Freeman,* 352 Mass. 556, 563–564, with *Commonwealth* v. *Crowell,* 347 Mass. 771, and *Commonwealth* v. *Kiernan,* 348 Mass. 29, 33. If we reached the merits we would assess at a considerable discount the defendant's argument that Abbott's remark was the virtual equivalent of the admission in evidence, contrary to our decisions, see *Commonwealth* v. *Fatalo,* 346 Mass. 266, 270, of the favorable results of a lie-detector test to support Abbott's credibility as a witness. In all events we can doubt that the jury took any more notice of Abbott's remark than counsel did at the time.

*Judgments affirmed.*