COMMONWEALTH *vs.* HARRY AMBERS.

Suffolk.    April 6, 1976. — August 18, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Homicide. Practice, Criminal,* Charge to jury; Capital case; Exceptions: failure to save exception.

At a murder trial in which the defendant repudiated an earlier confession wherein he had admitted that he went to a station of the Massachusetts Bay Transportation Authority with two others for the purpose of stealing coin boxes, that, after entering the station, one of his companions hit the victim on the head with a board and robbed him of money and a gold watch, and that they then proceeded to remove the coin boxes, there was no error in an instruction to the effect that if the jury believed the defendant's confession and found that he had engaged in a joint enterprise to commit robbery or larceny, then they were required to bring back a verdict of murder in the first or second degree. [838-841]

INDICTMENTS found and returned in the Superior Court on June 13, 1973.

The cases were tried before *Chmielinski, J.*

*Daniel F. Toomey* for the defendant.

*Kathleen M. Curry,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.    On December 5, 1973, the defendant was convicted by a Suffolk County jury of murder in the first degree and armed robbery. The case is here on appeal under G. L. c. 278, §§ 33A-33G, the defendant claiming that the judge's instructions to the jury were so misleading and inaccurate as to deprive him of his right to have the jury decide the facts. We do not agree and therefore we affirm the convictions below.

The evidence may be summarized as follows. During the morning hours of November 27, 1972, a Massachusetts Bay Transportation Authority porter was found mortally injured in the Essex Street station. The turnstiles had been broken into, the cash boxes were missing, and the victim's wallet and personal papers were found in a collector's booth.

The Commonwealth's case rested primarily on the statements made by the defendant during a series of interviews with a detective of the homicide unit of the Boston police department. The defendant's confession, which was recorded with his knowledge and consent, was introduced in evidence over his objection. In substance, the defendant, after being advised of his Miranda rights (see *Miranda* v. *Arizona,* 384 U.S. 436 [1966]), admitted that he, along with two others, had been involved in the incident at the Essex Street station on the morning of November 27, 1972.

The defendant stated that he and his two companions, his brother and one Lawrence Adams, had climbed a fence and had entered the station through a tunnel. Before entering the station, Adams told the defendant and his brother that there was a person in the station who was sleeping, but not to worry, for he, Adams, would "take care of that." Subsequently, the defendant saw Adams approach the collector's booth with a board and hit the porter over the head several times.

During the first interview, the defendant said that Adams had instructed the two brothers to go to opposite ends of the station and "to pop the machines quick and to take the boxes" after he had hit the porter. But in response to a question by the detective, the defendant said that he

thought that Adams was not going to harm the man but would only "put a knife to the guy and tell him not to move."

According to the defendant's statement, after the porter was struck with the plank of wood, Adams took a large, gold watch and some money from the victim. Thereafter, Adams and the defendant broke into five or six coin boxes with a sledge hammer while the defendant's brother stayed near the injured porter. Adams cut himself while prying open the boxes. As they fled the station, they dropped the boxes and some of the money on the subway tracks.

The defendant, the only defense witness, testified that his confession was fabricated in order to get revenge against his brother and Adams who he suspected had broken into his apartment and had stolen some of his belongings.

The remainder of the Commonwealth's case consisted of testimony and physical evidence tending to corroborate the details of the defendant's confession. The medical examiner testified that the porter's death was caused by multiple skull fractures resulting from successive blows to the head with a blunt instrument. The victim's wife testified that her husband had owned a gold watch with a large band and that she had not seen it since his death. Broken cash boxes were introduced in evidence, one of which had human bloodstains on it. Further, coins that had been found on the subway tracks were admitted in evidence.

At the close of all the evidence, the trial judge instructed the jury with respect to murder, including felony murder in the first and second degree (G. L. c. 265, § 1), and armed robbery (G. L. c. 265, § 17). He stated, when explaining the jury's duty to assess credibility, that their choice was a narrow one: if they believed what the defendant said in his interview with the detective, then a verdict of murder in the first or second degree would necessarily follow, but if they believed the defendant's court room testimony in which he recanted his prior statements, then he must be found not guilty. The judge, after defining joint enterprise, told the jury that if they believed the defendant's

confession and found that he had engaged in a joint venture to commit robbery, then he too would be responsible for the homicide if the homicide occurred during the commission of the robbery. At the suggestion of the assistant district attorney, the judge instructed the jurors that if they found that larceny, rather than robbery by force or violence, had been the extent of the joint venture, then a verdict of murder in the second degree would be justified.

Defense counsel submitted no suggested instructions to the judge, took no exception to the charge, and in fact, indicated agreement with the instructions as given. Following their deliberations, the jury found the defendant guilty of murder in the first degree and armed robbery.

The defendant's attorney for this appeal is not the attorney who represented him at trial. Counsel now argues that the judge's charge, by instructing the jury to return a verdict of murder in the first or second degree if they believed the defendant's confession, amounted to a deprivation of the defendant's right to have the jury make findings of fact as to the scope of the joint venture. Defense counsel contends that the judge, in effect, usurped the jury's function by directing a finding that the defendant had participated in a scheme of which homicide was a natural and probable consequence.

As noted above, the defendant made no objection to the judge's instructions. It is well settled that "an assignment of error under G. L. c. 278, §§ 33A-33G, brings nothing to this court unless based on a valid exception." *Commonwealth* v. *Chapman*, 345 Mass. 251, 255-256 (1962). *Commonwealth* v. *Gibson*, 368 Mass. 518, 525-526 (1975). This rule applies equally to capital cases within the definition of G. L. c. 278, § 33E. *Commonwealth* v. *Hall*, 369 Mass. 715, 717 (1976). Nevertheless, under the mandate of c. 278, § 33E, we have considered the whole case broadly to determine whether there was any miscarriage of justice, *Commonwealth* v. *Rego*, 360 Mass. 385, 394 (1971), and we hold that no relief is warranted or required under § 33E.

Several legal principles are especially pertinent in this case, viz: the law of joint venture and felony murder and

the related principles concerning first and second degree murder. We summarize these principles briefly.

*Commonwealth* v. *Richards,* 363 Mass. 299 (1973), defines the requirements for criminal liability in a joint enterprise. This standard, which requires that an accomplice intentionally encourage or assist in the commission of a crime and have the requisite mental state, *id.* at 307, is operative when determining liability for the felony which serves as the predicate for the application of the felony murder rule. Once it is determined that a defendant is a joint venturer in a felony and that a homicide occurred in the commission or attempted commission of that felony, complicity in the underlying felony is sufficient to establish guilt of murder in the first or second degree (see G. L. c. 265, § 1) if the homicide followed naturally and probably from the carrying out of the joint enterprise. See *Commonwealth* v. *Rego, supra; Commonwealth* v. *Devlin,* 335 Mass. 555 (1957); *Commonwealth* v. *Lussier,* 333 Mass. 83 (1955); *Commonwealth* v. *Devereaux,* 256 Mass. 387 (1926); *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785 (1975); W.R. LaFave & A.W. Scott, Jr., Criminal Law §§ 64, 71 (1972); Model Penal Code § 2.04 (3), at 24-26 (Tent. Draft No. 1, 1953).[1]

Although the law provides that a homicide committed in the commission of a felony is murder at common law, it is only by reason of G. L. c. 265, § 1, that murder perpetrated in the commission or attempted commission of a crime punishable by death or imprisonment for life (e.g., robbery, rape) becomes murder in the first degree. *Commonwealth* v. *Rego, supra* at 395.[2] Murder perpetrated during the commission or attempted commission of some other felony (e.g., breaking and entering, larceny) is mur-

---

[1] See the *Richards* case for the rule of accomplice liability where felony murder is not involved, 363 Mass. at 307. Cf. *Commonwealth* v. *Lussier, supra* at 91.

[2] The homicide may be a murder in the first degree on other grounds (deliberate premeditation or extreme atrocity and cruelty). *Commonwealth* v. *Rego, supra* at 394.

der in the second degree. *Ibid. Commonwealth* v. *White,* 353 Mass. 409, 424 (1967), cert. denied, 391 U.S. 968 (1968).

We believe that the judge's charge provided an adequate explanation of the law of joint venture and felony murder, and the relation of those principles to first and second degree murder. We also believe that a fair reading of the instructions, not treated in isolation but considered in light of the entire charge (*Commonwealth* v. *Benders,* 361 Mass. 704, 707 [1972]), refutes any argument that the judge directed findings of fact, thereby invading the province of the jury to the prejudice of the defendant.

Examining the charge as a whole, we find that the judge, by instructing with respect to felony murder in the first and second degree, and armed robbery and larceny,[3] permitted the jury to determine the purpose and extent of the joint venture. He also, of course, instructed that the defendant must be found not guilty if he was not involved at all. The judge's statements on the choice between believing the defendant's testimony and believing his prior confession, although somewhat an oversimplification of the case, permitted the jury to make findings as to the existence of a joint venture, the meaning of which was defined by the judge, and as to the defendant's participation in such a venture. Over all, we cannot conclude that the

---

[3] The judge did not explicitly set forth the elements of larceny; nevertheless, it was clear from his instructions that larceny, as contrasted with robbery, did not involve force or violence. Further, although we need not decide the point, it can be argued persuasively that the evidence did not warrant an inference that the defendant participated in a venture which intended only larceny, not robbery. The defendant's statements to the police indicated that he was, at least, aware that Adams was intending to use a knife to ensure that the porter did not interfere with their plan to break open the coin boxes. Given this unambiguous evidence, the present case is distinguishable from *Commonwealth* v. *Rego, supra* at 392-396, and *Commonwealth* v. *White, supra* at 424-426. In addition, although the jury may believe a witness in part only, in order to support a conclusion that the defendant was involved in no more than a larceny venture, the jury would have to indulge in an impermissible distortion of the defendant's confession. See *Mallard* v. *Waldman,* 340 Mass. 288, 290-291 (1960); *Woods* v. *Demont,* 322 Mass. 233, 235 (1948).

charge in this case was substantially misleading or inaccurate so as to deprive the defendant of his rights.

Further, the judge's charge was consistent with the defense counsel's tactics throughout the trial. The strategy of the defendant's lawyer, an experienced trial attorney, was to rely solely on the defendant's repudiation of his prior statements. In effect, counsel presented and argued the case, competently as well as understandably, in light of the overwhelming evidence of a felony murder in the first degree resulting from armed robbery, so as to create a limited choice for the jury — either believe the defendant's testimony on the stand or believe his prior statements. No effort was made to raise any doubt as to the scope of the joint venture, and in fact it was the prosecutor, and not defense counsel, who requested additional instructions regarding larceny and murder in the second degree.

Although we do not mean to suggest that defense tactics could justify an otherwise inaccurate or misleading charge, we find that the judge's instructions were adequate in the context of this case. As in *Commonwealth* v. *Underwood*, 358 Mass. 506 (1970), we will not, absent a valid objection and exception, permit a second lawyer on appeal "to convert the consequences of unsuccessful trial tactics and strategy into alleged errors . . . ." *Id.* at 510.

We have examined the entire record. In light of the evidence, the verdict on each indictment was clearly justified, and there was no miscarriage of justice warranting the exercise of our powers under § 33E.

*Judgments affirmed.*