COMMONWEALTH vs. CLIFFORD JONES.

Suffolk.    October 11, 1978. — December 26, 1978.

Present: HALE, C.J., KEVILLE, & BROWN, JJ.

*Practice, Criminal,* Speedy trial. *Constitutional Law,* Speedy trial. *Joint Enterprise.*

Where a defendant was indicted within six months of his request under G. L. c. 277, § 72A, for a speedy trial or other disposition of complaints against him, and, discounting a delay to which the defendant agreed and from which he benefited, the delay between his indictments and trial was less than six months, he was not entitled to dismissal of the indictments for violation of § 72A. [751–753]

A defendant in a criminal case was not denied his constitutional right to a speedy trial by reason of a twenty-one month delay between the time complaints were issued and the start of his trial on resulting indictments where there were no intentional delays attributable to the Commonwealth and where the defendant was not prejudiced by the delay. [753–757]

At the trial of an indictment for assault and battery by means of a dangerous weapon, the judge erred in failing to instruct the jury that in order to find the defendant guilty of an act committed by an accomplice in the course of an armed robbery, it must be shown that the defendant intentionally assisted the accomplice in the commission of the crime and shared with his accomplice the requisite intent to commit the crime. [757-760]

INDICTMENTS found and returned in the Superior Court on May 13, 1976.

The cases were tried before *Keating,* J.

The case was submitted on briefs.

*Susan J. Baronoff* for the defendant.

*Kathleen M. Curry,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was convicted of armed robbery (G. L. c. 265, § 17) on indictment no. 0331 and was

also convicted of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) on indictment no. 0798 and sentenced to concurrent terms of seven to ten years at the Massachusetts Correctional Institution at Walpole.[1] He assigns as error the trial judge's refusal to dismiss the indictments on the ground that his right to a speedy trial as guaranteed by G. L. c. 277, § 72A, and by the Federal and State Constitutions was violated. He also assigns as error under indictment no. 0798 the judge's instruction concerning criminal responsibility for the acts of an accomplice.

1. On May 1, 1975, a District Court issued a complaint and a warrant for the defendant's arrest in connection with a robbery committed on April 12, 1975. The defendant was apprehended in Iowa in August, 1975, and returned to Massachusetts sometime thereafter. On October 3, 1975, while being held at the Charles Street Jail awaiting proceedings on unrelated charges, the defendant filed a motion for a speedy trial or other disposition of the robbery charge. After a series of continuances the defendant (who in the meantime had started serving a sentence at the Massachusetts Correctional Institution at Concord for another crime) on December 24, 1975, filed a second application for a speedy trial or other disposition with the District Court which had issued the aforementioned complaint. On March 31, 1976, the court held a hearing at which the judge found probable cause and bound the defendant over to the grand jury, which returned the indictments mentioned above. Arraignment on those indictments took place on August 4, 1976. From that time until the defendant's trial, which began on February 23, 1977, there followed a series of court appearances for pretrial motions or for trial.

General Laws c. 277, § 72A, as appearing in St. 1963, c. 343, § 72A, provides that the Commissioner of Correc-

---

[1] A verdict of not guilty was directed on a third charge of assault with intent to commit murder (G. L. c. 265, § 15).

tion or another prison official, upon learning of an un-tried charge against a prisoner "serving a term of imprisonment," must give that prisoner notice of the charge, and that the prisoner if he applies for a speedy trial, "shall, within six months after such application is received by the court, be brought into court for trial or other disposition of any such indictment, information or complaint, unless the court shall otherwise order."

The six-month statutory period started running, as the defendant concedes, at the time the second application was filed on December 24, 1975, because only at that time was he "serving a term of imprisonment," as required by the statute. *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 740-741 (1976).[2]

The statutory requirement of a "disposition" within six months was initially satisfied when the defendant was indicted on May 13, 1976. *Commonwealth* v. *Stewart*, 361 Mass. 857 (1972). We shall assume without deciding that a pretrial disposition does not completely satisfy the Commonwealth's statutory duty and that such a disposition starts the running of another six-month period for trial or other disposition under the original § 72A application. See, e.g., *Commonwealth* v. *Royce*, 358 Mass. 597, 599 (1971); *Commonwealth* v. *Stewart*, 361 Mass. at 858; *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 526 (1975).

Between indictment and trial there was a nine-month-and-ten-day delay. However, 72A does not require the automatic dismissal of cases where the trial is not begun within six months of an event that starts the running of the statutory time limit. *Commonwealth* v. *Alexander*, 371 Mass. 726, 729 (1977). Those delays to which a defendant acquiesces (*Commonwealth* v. *Carr*, 3 Mass. App. Ct.

---

[2] It is clear that the six-month period runs from the time of receipt of the application. *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 525-526 (1975). The Commonwealth does not argue that the application was received at a time after it was filed, so the time of filing, December 24, 1975, will be deemed the time of receipt.

654, 656-657 [1975]; *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. 571, 576, 577-578 [1977]), for which he is responsible (*Commonwealth* v. *Loftis,* 361 Mass. 545, 549-550 [1972]), or from which he benefits (*Commonwealth* v. *Boyd,* 367 Mass. 169, 178 [1975]; *Commonwealth* v. *Alexander,* 371 Mass. at 729) must be subtracted from the time of total delay to ascertain the length of delay for statutory purposes. *Commonwealth* v. *Campbell,* 5 Mass. App. Ct. at 576. We need not look beyond the delay of the three months and nineteen days between August 4 and November 23, 1976, to which the defendant concedes he agreed and from which he benefited. This delay subtracted from the total delay results in a showing that the defendant went to trial within six months of the indictment. The record thus reveals no violation of the defendant's right to a speedy trial under § 72A.

2. As stated earlier, the defendant also argues that he was denied his right to a speedy trial guaranteed by the Federal and State Constitutions[3] (see *Klopfer* v. *North Carolina,* 386 U.S. 213, 223 [1967]; *Commonwealth* v. *Gove,* 366 Mass. 351, 356-357 [1974]), which provisons are analogous for purposes of this discussion. *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. at 526. We are again called upon to engage in the balancing process described in *Barker* v. *Wingo,* 407 U.S. 514, 530 (1972),[4] to determine whether the Commonwealth has complied with the constitutional mandate for a speedy trial.

In this case the right attached at the time the complaint issued. See *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. at 526-527. With this measure, the delay between the complaint and the start of the trial was twenty-one months and twenty-two days. This is a sufficient length

---

[3] A prisoner retains the constitutional right to a speedy trial. *Smith* v. *Hooey,* 393 U.S. 374, 379 (1969).

[4] There, the Supreme Court stated that a court must balance four factors, the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

of time to trigger an examination of the other three factors mentioned in *Barker* v. *Wingo*, 407 U.S. at 530.

By two formal motions, the first of which was made within two months of his arrest, the defendant promptly asserted his rights, but this standing alone is not enough. There were good reasons for much of the delay. Between the time of the complaint (May 1, 1975) and his arrest and return to Massachusetts, which occurred at an unspecified time before the October 3 application for speedy trial, the defendant was not in the Commonwealth's custody. The defendant does not argue that the Commonwealth was dilatory in securing his return for trial, so that period cannot be attributed to the prosecution. *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. at 527-528.

Between the October 3, 1975, application for a speedy trial and the March 31, 1976, hearing at which the defendant was bound over to the grand jury, there were a number of unexplained and apparently unobjected to delays in the District Court.[5]

---

[5] Following the receipt of the application for a speedy trial, a hearing was set for October 9 for which notice was sent to the district attorney and to defense counsel. On that date it was continued to October 23, apparently because the victim and police were unavailable. The case was continued at that time, and also on October 30, October 31, and November 5. It was finally taken off the list on November 12. No explanation of those events appears in the record or is suggested in the briefs.

When the defendant reapplied for a speedy trial on December 24, 1975, he had been moved from the Charles Street Jail to the Massachusetts Correctional Institution at Concord. The case was put back on the list for hearing on January 7, 1976, and notice was sent to the defendant, his counsel, and the district attorney. At that hearing the case was continued to February 4, 1976, and a subpoena was issued for the victim returnable on that date. The case was continued on February 4 to March 15, and a habeas corpus was issued for the defendant at Charles Street Jail (on the erroneous belief that the defendant was still incarcerated there). On March 15 — we assume because of failures of the efforts to secure an appearance of the victim and the defendant, although it does not appear on the record — the court continued the case until March 31 and issued a habeas corpus for the defendant at M.C.I. Concord and a capias for the victim. On that date the hearing was held, and the defendant was bound over to the grand jury.

Reasons for each delay are not entirely clear from the record, although we note that the factor most likely to have contributed to the delays was the Commonwealth's inability to secure the presence of the victim (the key witness) and the defendant at the hearings. As in *Commonwealth* v. *Gove*, 366 Mass. at 362, "[t]he defendant has not established lack of due diligence by the Commonwealth [or] . . . deliberate efforts by the Commonwealth to postpone trial." The defendant alleged that this delay was the fault of the Commonwealth but did not point to any unreasonable conduct on its part. Delays granted to allow the Commonwealth to locate a key witness (*Barker* v. *Wingo*, 407 U.S. at 531; *Commonwealth* v. *Daggett*, 369 Mass. 790, 794 [1976]) or those caused by a failure quickly to locate the defendant within the correctional system when he had been a fugitive for justice for some time after the issuance of the complaint (*Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 528) are often justifiable and not properly chargeable against the Commonwealth. See *Commonwealth* v. *Gilbert*, 366 Mass. 18, 22-23 (1974); *Commonwealth* v. *Beckett*, 373 Mass. 329, 333 (1977). It is probable that the delay here was justifiable on one of the above grounds. Even if we assume for purposes of this discussion that this delay was chargeable to the Commonwealth as if it were an administrative delay for which the Commonwealth must bear ultimate responsibility, it does not weigh against the Commonwealth as seriously as would an intentional attempt to delay the proceedings. See, e.g., *Commonwealth* v. *Burhoe*, 3 Mass. App. Ct. 590, 594 (1975); *Commonwealth* v. *Blaney*, 5 Mass. App. Ct. 96, 99 (1977).

The delay from the March 31 bindover hearing to May 13, when the indictments were returned, is unexplained. We assume that it was caused by congestion due to the number of cases before the grand jury and that the case came too late to be heard by the April grand jury, an

inadvertent though perhaps inevitable administrative delay, that is, as noted above, chargeable against the Commonwealth to a lesser degree than a deliberate delay.

Following the indictment on May 13, 1976, there was a period of nine months and ten days until the trial on February 23, 1977. An examination of the Superior Court docket and of the transcripts of proceedings in the first criminal session reveals that nearly four months of the delay were either for the benefit of the defendant or acquiesced in by him. Delays for which the defendant is responsible are not chargeable against the Commonwealth. *Commonwealth* v. *Horne,* 362 Mass. 738, 744, 745 n.2 (1973). *Commonwealth* v. *Boyd,* 367 Mass. at 180. The remaining five to five and one-half months of that period resulted from administrative delay caused by court congestion and difficulties in scheduling the case for trial.[6]

Our examination discloses no intentional delays attributable to the Commonwealth, and, depending upon our interpretation of the delay in the District Court, an unintentional administrative delay of five to thirteen months chargeable to the Commonwealth for less blameworthy reasons. However, the fact that part of the delay is attributable to the Commonwealth does not, without more, require dismissal. *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. at 594.

Normally the burden is on the defendant to show that the prosecutor "unreasonably caused a prejudicial delay," *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22 (1974), unless the delay is so massive as to carry a presumption of prejudice, *Commonwealth* v. *Green,* 353 Mass. 687, 690 (1968), or the Commonwealth's culpability obviates the need to show prejudice. See *Commonwealth* v. *Jackson,* 3 Mass. App. Ct. 511, 517 (1975). Prejudice need not always be shown to prove a denial of the right to a speedy trial,

---

[6] Other indictments charging the defendant with unrelated offenses were also before the court at that time, and the attempt to fit them into available trial time appears to have been a factor in this delay.

but its absence is an important factor to be considered when, as here, the defendant has shown neither culpability nor delay that is prejudicial per se. *Commonwealth* v. *Burhoe*, 3 Mass. App. Ct. at 595.

The defendant argues that he was prejudiced because the pendency of the charges in the present case made it impossible for him to obtain a parole from the sentence he was then serving. The loss of an opportunity for parole can be a serious form of prejudice. *Moore* v. *Arizona*, 414 U.S. 25, 27 (1973). *Commonwealth* v. *Gove*, 366 Mass. at 365. It may require dismissal because of delay. Compare *Needel* v. *Scafati*, 289 F. Supp. 1006 (D. Mass. 1968), rev'd on other grounds 412 F.2d 761 (1st Cir.), cert. denied, 396 U.S. 861 (1969). The defendant's claim, however, is unsupported by any evidence in the record that parole would have been forthcoming in the absence of delay and so must be treated as speculative and insubstantial. *Commonwealth* v. *Parry*, 1 Mass. App. Ct. 730, 734 n.3 (1974). *Commonwealth* v. *Burhoe*, 3 Mass. App. Ct. at 595. *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. at 584-585 (1977).

The defendant also claims that the delay caused him anxiety, and missed opportunities for concurrent sentencing and participation in rehabilitation programs. These may sometimes be sufficiently prejudical to require dismissal. See *Strunk* v. *United States*, 412 U.S. 434, 439 (1973). *Commonwealth* v. *Gove*, 366 Mass. at 365. However, the defendant again fails to point to support in the record for these claims. They remain too speculative to be of benefit to the defendant. *Commonwealth* v. *Gove*, 366 Mass. at 365. *Commonwealth* v. *Blaney*, 5 Mass. App. Ct. at 100 (1977). We conclude that there was no error in the denial of the motions to dismiss the indictments. *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. at 585.

3. The defendant argues that his conviction of assault and battery by means of a dangerous weapon must be overturned because the judge erred in his charge to the jury with regard to that indictment. He asserts that the

judge's instructions did not correctly state the law concerning criminal joint enterprise.

There was evidence that the defendant and his brother robbed a variety store on the afternoon of April 12, 1975. The brother pointed a handgun at the store clerk while the defendant took money from the cash register. When the brother announced that he planned to shoot the store clerk, the defendant remarked, "Well, if you are going to shoot, wait until I go out." After the defendant went outside his brother, ignoring the pleas of the victim to spare her life, struck her on the head with the gun but failed in his subsequent attempt to shoot her, apparently because his gun malfunctioned.

The judge charged the jury as to joint venture in the words set out in the margin.[7] At a later point in the charge he stated that if the jury should find that the defendant had been in the store as a joint participant in the robbery, "then he is just as responsible [for the assault and battery] as the person who hit her on the head." The defendant took a timely exception to the parts of the charge set out or described above and accompanied it with a statement of reasons why he considered the charge to be wide of the mark. We hold that the instructions given stated the applicable law incorrectly.

It is well settled that to hold a person criminally responsible for the acts of another it must be shown that the

---

[7] "Now, in that regard you are going to have two indictments in there, one of which says that he was armed while robbing, and another that he committed an assault and battery by means of a dangerous weapon, to wit, a gun; and the fact that the evidence in the case is that this young man, if it's believed, did not have the gun, that another man had it — you will apply in your theory, if you decide that this defendant was there, the joint venture theory, which is if two or more people out to do something together, one watches and one goes in, or one holds a gun, and the other doesn't, there is no escaping for the person that has the lighter part in saying, 'Well, he didn't hold the gun.' It's just as though he has that gun himself, even though he hasn't got it actually. It's a joint venture. They set out to perform an illegal act, two or more, and so everything that the person does, the most extreme thing that the person does is the act of both."

passive party shared the mental state required to convict the active party of the crime charged and that the passive party intentionally assisted the active party in that crime. *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). Accord, *Commonwealth* v. *Ferguson,* 365 Mass. 1, 8 (1974); *Commonwealth* v. *Hogg,* 365 Mass. 290, 296 (1974); *Commonwealth* v. *Blow,* 370 Mass. 401, 407-408 (1976); *Commonwealth* v. *Ambers,* 370 Mass. 835, 839 (1976); *Commonwealth* v. *Scanlon,* 373 Mass. 11, 17 (1977); *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 613 (1973); *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 789 (1975); *Commonwealth* v. *Perry,* 3 Mass. App. Ct. 308, 312-313 (1975). *Richards* stated this standard in a prosecution for assault with intent to murder, but it has since been applied in a variety of contexts, and we regard it to be applicable to the crime of assault and battery by means of a dangerous weapon.[8]

The judge here refused to instruct the jury that to find the defendant guilty they must find that he shared with the principal the state of mind required of the principal to be guilty of the assault and that he intentionally assisted or participated in the acts charged. Nor did he give a proper alternative charge that the jury might find the requisite intent should they determine that the defendant had a conditional intent or willingness to see the assault committed if necessary (i.e. to make good an escape or to eliminate potential witnesses) which might be inferred from the defendant's "knowledge of, and acquiescence in, the principal's carrying the weapon used as a means to the desired end." *Commonwealth* v. *Scanlon,* 373 Mass. at 17, citing *Commonwealth* v. *Ferguson,*

---

[8] An assault with intent to murder is a crime requiring specific intent, while assault and battery by means of a dangerous weapon is a crime requiring general intent. See *Commonwealth* v. *Randall,* 4 Gray 36, 38-39 (1855). But this factor does not appear to be of any special significance here. See *Commonwealth* v. *Richards,* 363 Mass. at 307 n.3.

365 Mass. at 8, and *Commonwealth* v. *Richards*, 363 Mass. at 307-308.[9]

The instruction given here fails to meet the standards required by *Richards* (a case to which the judge's attention was specifically drawn by defense counsel) and its progeny for determining the defendant's responsibility as a participant in a joint enterprise.[10] The defendant was entitled to have the jury decide on the basis of appropriate instructions whether the evidence here was sufficient to establish his complicity in the assault and battery. See *Commonwealth* v. *Benders*, 361 Mass. 704, 707-708 (1972); *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 76 (1973); *United States* v. *Peoni*, 100 F.2d 401, 402 (2d Cir. 1938); *Bailey* v. *United States*, 416 F.2d 1110, 1113 (D.C. Cir. 1969).

The judgment on indictment no. 0331 is affirmed. The judgment on indictment no. 0798 is reversed and the verdict set aside.

*So ordered*

---

[9] A shared intent to shoot the clerk could supply the intent necessary for conviction of assault and battery with a dangerous weapon.

[10] Even in the context of a felony murder the Commonwealth must show that the killing was a natural and probable consequence of the felony. *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976), and cases cited. We note that some jurisdictions have held that the "natural and probable consequence" relationship is the only requirement for criminal responsibility in the context of a joint enterprise. E.g., *United States* v. *DeLaMotte*, 434 F.2d 289, 293 (2d Cir. 1970), cert. denied, 401 U.S. 921 (1971); *People* v. *Jones*, 12 Ill. App. 3d 643, 647 (1973); *Atherton* v. *State*, 248 Ind. 354, 356 (1967); Lafave & Scott, Criminal Law § 65 (1972). The *Richards* court stated that this simplified formulation "has been ... rejected in the Commonwealth." 363 Mass. at 306.